**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1013
_____

KATIE NEIDIGH,
                              Appellant

v.

SELECT SPECIALTY HOSPITAL - MCKEESPORT


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:14-cv-00576)
District Judge:  Hon. Cathy Bissoon
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 4, 2016
_____

Before:  SHWARTZ, GREENBERG, and ROTH, Circuit Judges.

(Filed: November 30, 2016)

_____

OPINION[*]
_____


SHWARTZ, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Katie Neidigh appeals from the District Court's order granting summary judgment in favor of Select Specialty Hospital McKeesport ("Select") on her discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq. ("PHRA"), and retaliation claim under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").[1] For the reasons set forth below, we will affirm.

I

Select employed Neidigh as a respiratory therapist from March 6, 2009 until her termination on April 18, 2013. Neidigh had known and pre-existing back problems, but she was able to perform her job.

On or around February 22, 2013, Neidigh learned that she was pregnant and informed Julia Shultz, Select's Human Resources Coordinator, Susan Pleins, Chief Nursing Officer, and Kristie Koklarinis, Neidigh's immediate supervisor. CEO Daniel Butts also learned of Neidigh's pregnancy. Koklarinis expressed concern about Neidigh's ability to continue working through her pregnancy due to her back problems.[2] In fact, a physician had warned Neidigh that pregnancy could exacerbate her back issues.

Neidigh did not have back problems during the first several weeks of her pregnancy. On April 13, 2013, she sought medical attention at MedExpress for back pain. Neidigh notified Select that she would be absent from her April 14 shift due to her

---

[1] Neidigh also asserted a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and an FMLA interference claim, 29 U.S.C. § 2601 et seq., but the District Court dismissed these claims, and Neidigh does not appeal those rulings.

[2] Neidigh met with Shultz, and they discussed the availability of FMLA leave.

back pain,[3] and Koklarinis filled in because no one else was available.  While Koklarinis was covering her shift, Neidigh sent a text message to another respiratory therapist who was working that day, asking whether Koklarinis was "mad."  App. 265.  Koklarinis instructed him to respond that she was "furious."  App. 265.

During the April 14 shift, Koklarinis cared for the husband of "Mrs. M."  Neidigh normally cared for this patient, and Mrs. M asked Koklarinis where she was.  Koklarinis replied that Neidigh was feeling "under the weather."  App. 260, 666.  Mrs. M said that she recently learned Neidigh was pregnant which, Mrs. M said, "explains a lot."  App. 260.  Koklarinis asked what Mrs. M meant, and Mrs. M explained that during a visit two weeks earlier, Neidigh yelled and waved her finger at Mrs. M and her granddaughter for failing to put on infection-control gowns and gloves when they entered Mrs. M's husband's room.

On April 16, Koklarinis informed Pleins about Neidigh's behavior with Mrs. M.  Pleins shared Koklarinis's account with Shultz and Butts, spoke with Mrs. M about the incident, and e-mailed Shultz, Butts, and John St. Leger, Select's CEO, a summary of her discussion with Mrs. M.[4]

The same day, Butts met with Mrs. M and thereafter held a conference call with Shultz and Barbara Foster, Select's Regional Human Resources Director, about the

---

[3] On April 16, Neidigh provided a note from her chiropractor that she would also be absent from her next scheduled shift on April 17 "due to a lumbar strain."  App. 501

[4] Shultz is responsible for, among other things, advising on discipline.  She testified that, if a family member complains to an employee of Select, the complaint is written on a form and that form is sent to the director of quality management.  Neither Koklarinis nor Mrs. M completed such a form, but, consistent with Select's practices, the Chief Nursing Officer and CEO spoke with Mrs. M.

incident. Before their discussion, Shultz sent an e-mail to Foster stating, "Just an FYI, I know that you would need to be aware that Katie [Neidigh] is also very recently pregnant." App. 548. During the call, they discussed the incident and reviewed Neidigh's personnel file, which contained reports of earlier inappropriate workplace conduct and a "Final Written Warning," which notified Neidigh that "[a]ny further violation may result in termination."[5] App. 546. Butts and Foster decided to terminate Neidigh's employment.

On April 18, Shultz called Neidigh and asked her to come in for a meeting. At the meeting, which Shultz, Butts, and Koklarinis attended, Neidigh was told she was being terminated; she was not permitted to provide any information, and she refused to sign a disciplinary action form. Neidigh was replaced by a male respiratory therapist.

Neidigh sued Select for, among other things, pregnancy discrimination under Title VII and the PHRA, and for retaliation under the FMLA. Following discovery, Select moved for summary judgment. The District Court granted the motion, concluding that Neidigh stated a prima facie case of discrimination and FMLA retaliation, but that she failed to demonstrate that Select's reasons for firing her were pretextual. Neidigh appeals.

---

[5] Neidigh received the Final Written Warning for "reprimanding another employee in front of patients, patient families and other staff members." App. 546. After Neidigh received the Final Written Warning and before her pregnancy, Select received another complaint about Neidigh. Specifically, a patient, Mrs. D, complained that Neidigh had removed respiratory equipment without saying anything to her. Pleins investigated the complaint, received a written statement from Neidigh, learned that Mrs. D was viewed as a "confused" and "difficult person," and that another employee was in the room during the incident and he witnessed no wrongdoing. App. 251, 397. No formal disciplinary action was taken against Neidigh with respect to Mrs. D's complaint.

4

## II[6]

We examine Neidigh's Title VII and PHRA pregnancy discrimination claims as well as her FMLA retaliation claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973).[7] See Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008) (pregnancy-related discrimination); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012) (FMLA retaliation). Under the McDonnell Douglas framework, a plaintiff claiming discrimination must first establish a prima facie case. Doe, 527 F.3d at 364. If the plaintiff is able to establish a prima facie case, "'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (quoting McDonnell

---

[6] The district court had jurisdiction over Neidigh's Title VII and FMLA claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and jurisdiction over the PHRA claim pursuant to 28 U.S.C. § 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the District Court's grant or denial of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[7] Title VII and PHRA claims are analyzed in the same manner. See Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995); see also Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (considering Title VII, PHRA, and § 1981 claims identically under the McDonnell Douglas framework).

5

Douglas, 411 U.S. at 802). If the employer meets its burden, "[t]he plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (per curiam). "[T]hroughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

## A

We have reviewed Neidigh's pregnancy discrimination claim and conclude that it does not withstand summary judgment. Even assuming Neidigh has established a prima facie case of pregnancy discrimination,[8] Select has articulated a legitimate, non-discriminatory reason for her termination. Select asserts that Neidigh's conduct with Mrs. M and her granddaughter violated its policies concerning respectful treatment of others and professional behavior. This incident, along with Neidigh's prior disciplinary record,[9] which included a Final Written Warning informing her that "[a]ny further

---

[8] To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate: (1) she was pregnant and the employer knew it; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) some nexus existed between her pregnancy and the adverse employment action. Doe, 527 F.3d at 365.

[9] Neidigh's disciplinary issues also included: (1) a warning relating to inappropriate patient care documentation; (2) a note relating to Neidigh's "defensive attitude" toward Select's then-Director of Clinical Services and his counseling her about insubordination, App. 624; (3) a report by two nursing assistants that Neidigh was verbally rude to them and a warning that further incidences can result in disciplinary action; (4) counseling against horseplay and not wasting supplies and (5) a written warning for attendance policy violations.

violation may result in termination," App. 546, provides a legitimate, non-discriminatory reason for the termination.

Neidigh has not adduced evidence showing that Select's reasons for her termination were pretextual. To establish pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (internal quotation marks and citation omitted). The employee "must show[] not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).

Neidigh argues that a factfinder could disbelieve Select's reasons based on the "unusually suggestive" timing of her termination. Appellant's Br. 36, Reply Br. 15. As to timing, there are two significant events. One is the proximity between Neidigh's announcement she was pregnant and her termination. The other is the timing of her absence "due to a lumbar strain" and her termination. The former is not temporally proximate. The latter, while proximate, does not suggest Neidigh was fired because she was pregnant. Even if we infer that her lumbar strain was pregnancy-related (even though her doctor does not say so), events transpired during her absence that led to her termination which were unrelated to her pregnancy. Neidigh was terminated four days after calling out for her April 14 shift, but in that four-day period, Neidigh's incident with

Mrs. M came to light. The timing of the revelation of the incident with Mrs. M, together with Neidigh's disciplinary record, undermines any contention that the timing of her termination was suggestive of discrimination. See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (no evidence termination for absenteeism was pretextual where "the chronology of events far more strongly suggest[ed]" that the employer was concerned about the dependability of the plaintiff, a probationary employee).

Neidigh also argues that the timing, in addition to other facts pertaining to Koklarinis's role in her termination, support a finding that the reasons offered were pretextual. In this regard, Neidigh relies on what she considers a "plethora" of evidence showing Koklarinis resented her pregnancy, including Koklarinis's concern about Neidigh's ability to work during her pregnancy, her statement that she was furious for having to work when Neidigh was absent, and the fact that Koklarinis was the source of Mrs. M's complaints. Appellant's Br. 57, Reply Br. 11. Even assuming that evidence showed discriminatory animus on Koklarinis's part, that evidence would be material here only if Neidigh could establish either Koklarinis participated in the decision to fire her from Select or she could show Select's liability under the "cat's paw" theory. Under the latter theory, discriminatory intent may be imputed to the employer if a supervisor performs an act motivated by discriminatory animus that is intended to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action. See McKenna v. City of Phila., 649 F.3d 171, 177-78 (3d Cir. 2011) (stating that "'the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart

from the supervisor's recommendation, entirely justified'") (quoting <u>Staub v. Proctor Hosp.</u>, 562 U.S. 411, 421 (2011)).

Neither basis applies. First, although Koklarinis was present when Neidigh was told she was fired, Koklarinis did not participate in the termination decision. Second, Koklarinis's allegedly biased report did not serve as the sole source of facts concerning the incident with Mrs. M. After Koklarinis reported Mrs. M's complaint, Pleins and Butts each spoke separately with Mrs. M about the incident. Thus, Koklarinis's act was not the proximate cause of Neidigh's termination. <u>See</u> <u>Jones v. Se. Pa. Transp. Auth.</u>, 796 F.3d 323, 331 (3d Cir. 2015) (stating that the <u>Staub</u> Court "did indicate that proximate cause will not exist when the employer does not rely on the 'supervisor's biased report' in taking the ultimate adverse action" and finding no evidence that the employer had merely adopted the supervisor's biased account of events).

Neidigh also relies on the e-mail from Shultz to Foster reminding those involved in the termination that Neidigh was pregnant. This disclosure itself is not an indicator of discrimination. Indeed, we have said that having accurate information about employees is essential to allow employers to properly review their employment decisions and comply with state and federal law. <u>See</u> <u>Armbruster v. Unisys Corp.</u>, 32 F.3d 768, 781 (3d Cir. 1994), <u>overruled on other grounds by</u> <u>Smith v. Borough of Wilkinsburg</u>, 147 F.3d 272, 277-78 (3d Cir. 1998). Here, there is no evidence that this communication was made for anything other than informational and potential legal purposes, nor is there

evidence that Neidigh's pregnancy was a consideration in the decision to terminate her.[10]

Finally, Neidigh claims that the more favorable treatment she received in response to Mrs. D's 2012 complaint, discussed in note 5, infra, should have precluded summary judgment. The District Court correctly observed that there are legitimate, non-discriminatory bases for the way Select responded to Mrs. D's and Mrs. M's complaints. Mrs. D was known to be a "difficult" and "confused" person, and Pleins took Neidigh's statement once she had received two conflicting accounts of the incident. That Neidigh was terminated without submitting a written statement in response to Mrs. M's complaint would not cause a reasonable factfinder to disbelieve Select's reason for termination or to believe that pregnancy, rather than Mrs. M's complaint and Neidigh's disciplinary record, was more likely the basis for termination. First, there is no evidence to suggest Mrs. M's account was not accurate. Second, Mrs. M's incident was independently investigated by two superiors. For these reasons, no reasonable juror could conclude that the different treatment in connection with the Mrs. D incident gives rise to an inference of discrimination.[11]

---

[10] Neidigh attempts to raise factual issues based on discrepancies in Butts's testimony concerning the identities of who decided to fire her. In this case, their identities are immaterial as to pretext because they do not call into question Select's reason for termination. See Lichtenstein, 691 F.3d at 310-11 (contradictions pertained to the timing of termination and went "to the very core of [the employer's] proffered reason for terminating [the employee]").

[11] Relatedly, Neidigh contends that Select's failure to follow its own complaint and discipline process by not taking a statement from Mrs. M at the time of the incident supports a finding of pretext. We disagree. First, Select was not aware of the incident until weeks after it occurred. Second, while Neidigh correctly notes that procedural irregularities can be evidence of discriminatory intent, see Stewart v. Rutgers, The State Univ., 120 F.3d 426, 433-34 (3d Cir. 2000), Select's written disciplinary procedures provide it with discretion, allowing immediate suspension or termination of an employee

B

Neidigh's argument that the District Court erred in granting summary judgment on her FMLA retaliation claim also fails. Even assuming Neidigh established a prima facie case,[12] Select provided a legitimate, non-discriminatory reason for termination and Neidigh has not presented evidence of pretext. While the record shows that her supervisor was concerned about Neidigh's pregnancy and unhappy she was on leave, there is no evidence that Neidigh's use of leave motivated the employment decision. Although her absence led to the discovery of the incident with Mrs. M, it was that incident, in the context of her prior violations, and not the fact that she was on leave, that led to her termination. For these reasons, we conclude that no reasonable juror could find that the reason for her termination was pretextual.

III

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment for Select.

---

in some circumstances. Third, there is no evidence that similarly situated employees were treated differently than Neidigh. In fact, in Neidigh's situation with Mrs. D, no statement was taken from Mrs. D at or around the time of her complaint either.

[12] To establish a prima facie FMLA retaliation claim, a plaintiff must demonstrate that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein, 691 F.3d at 301-02.