PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 14-3814

————

MICHELLE PRECIA JONES,

Appellant

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY; ALFRED OUTLAW

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-06582)
District Judge:  Honorable William H. Yohn, Jr.

————

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2015

Before:  HARDIMAN, GREENAWAY, Jr. and KRAUSE,
*Circuit Judges*.

(Filed: August 12, 2015)

Olugbenga O. Abiona
1st Floor
1433 South 4th Street
Philadelphia, PA 19147

Brian M. Rhodes
356 North State Road
Springfield, PA 19064
            *Attorneys Appellant*

Danielle Banks
Michelle K. Carson
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
            *Attorneys Appellees*

_____

## OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

In this appeal, we consider whether a suspension with pay constitutes an "adverse employment action" under the substantive discrimination provision of Title VII. We hold that it typically does not.

### I

Michelle Jones was fired in 2011 by her employer, the Southeastern Pennsylvania Transportation Authority (SEPTA). SEPTA says it dismissed Jones for submitting fraudulent timesheets; Jones says her termination was the

2

culmination of years of unlawful sexual harassment, gender discrimination, and retaliation. The District Court entered judgment for SEPTA, *Jones v. SEPTA*, 2014 WL 3887747 (E.D. Pa. Aug. 7, 2014), and Jones filed this appeal.

SEPTA is a public transit agency that serves Philadelphia and its environs. In 2001, Jones began working as an administrative assistant in SEPTA's Revenue Operations Department under the supervision of Alfred Outlaw. On December 1, 2010, Outlaw suspended Jones with full pay after he discovered apparent fraud in her timesheets. Jones promptly informed SEPTA's Equal Employment Opportunity (EEO) Office that she intended to file a complaint against Outlaw. At a meeting the following week, Jones told the EEO Office that he had "sexually harassed" and "retaliated against" her. App. 167.

In the meantime, Outlaw referred the timesheet matter to SEPTA's Office of Inspector General (OIG). After an extensive investigation, OIG concluded in February 2011 that Jones collected pay for days she hadn't worked by submitting fraudulent timesheets. SEPTA suspended Jones without pay on February 22, 2011 and formally terminated her in April of that year.

Jones continued to press her grievances throughout this process. In March 2011, she filed a complaint with the Pennsylvania Human Relations Commission alleging that Outlaw had sexually harassed her and other female employees, ordered her to do personal work for him during business hours, and retaliated against her for resisting this mistreatment by accusing her of timesheet fraud. SEPTA therefore ended its internal investigation, but not before concluding that Outlaw had engaged in inappropriate behavior by once asking Jones to step on his back to relieve

3

spinal pain. This "lapse in judgment" was noted in Outlaw's annual performance evaluation, and he was required to attend a training session regarding SEPTA's sexual harassment policy. App. 1089–90.

Jones ultimately filed suit against SEPTA and Outlaw in the United States District Court for the Eastern District of Pennsylvania. Her amended complaint alleged gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Rights Act (PHRA). She also alleged a violation of the Fourteenth Amendment of the United States Constitution, common law wrongful termination, and retaliation in violation of the Family and Medical Leave Act. The District Court dismissed the wrongful termination claim and subsequently granted summary judgment to SEPTA and Outlaw on the remaining claims. Jones has appealed only the Court's summary judgment on the Title VII, PHRA, and constitutional claims.

II

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291, and our review of a summary judgment is plenary. *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015).

III

The linchpin of the District Court's opinion was its holding that Jones's claims fail principally because her initial suspension with pay was not an adverse action within the meaning of the employment discrimination laws. *Jones*, 2014 WL 3887747, at *3–4, 6, 9. This is an issue of first impression in the Third Circuit. Although we need not consider and do not decide whether a paid suspension

4

constitutes an adverse action in the retaliation context, *see infra* Section IV-B, we hold that such a suspension generally does not constitute an adverse action in the substantive discrimination context.

Title VII forbids employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Our analysis of claims arising under this "substantive provision" is governed by the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): first we ask whether the plaintiff has stated a prima facie case of discrimination or retaliation; if she has, we ask whether the employer has advanced a legitimate reason for its conduct; and finally we give the plaintiff an opportunity to prove that the employer's proffered reason is pretextual. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

A Title VII plaintiff must prove that she suffered an adverse employment action in order to satisfy step one of *McDonnell Douglas*. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). We have described an adverse employment action "as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks omitted).

The District Court held that Jones's suspension with pay did not constitute an adverse employment action under Title VII. *See Jones*, 2014 WL 3887747, at *4. Although the District Court noted that we have "not addressed this issue," it

5

also noted that other courts of appeals have unanimously concluded that "placing an employee on paid administrative leave where there is no presumption of termination" is not an adverse employment action under the substantive provision of Title VII. *Id.*; *see Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004); *see also Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (holding that "placing [an employee] on administrative leave with pay for a short time to allow investigation" is not an adverse action for retaliation purposes), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (placement on paid administrative leave is not an adverse action for purposes of a First Amendment retaliation claim). *But cf. Dahlia v. Rodriguez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (en banc) (placement on paid administrative leave can be an adverse action for purposes of a First Amendment retaliation claim).

Like the District Court, we think this chorus is on pitch. A paid suspension pending an investigation of an employee's alleged wrongdoing does not fall under any of the forms of adverse action mentioned by Title VII's substantive provision. That statute prohibits discrimination in hiring, firing, and "compensation, terms, conditions, or privileges of employment." § 2000e-2(a)(1). A paid suspension is neither a refusal to hire nor a termination, and by design it does not change compensation. Nor does it effect a "serious and tangible" alteration of the "terms, conditions, or privileges of employment," *Storey*, 390 F.3d at 764, because "the terms

6

and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances," *Joseph*, 465 F.3d at 91. We therefore agree with our sister courts that a suspension with pay, "without more," is not an adverse employment action under the substantive provision of Title VII. *Id.*

Applying this legal standard to the facts of this appeal, we readily agree with the District Court that Jones's suspension with pay did not constitute an adverse employment action. In her brief, Jones summarily declares that her "indefinite suspension" that began on December 1, 2010 was an adverse employment action without providing any argument for why this is so. Jones Br. 44. Having failed to marshal evidence that her suspension with pay was atypical in any way, Jones's argument fails for the same reasons stated by our sister courts in the cases we have cited. Accordingly, we hold that Jones's suspension with pay from December 1 to February 22 (when SEPTA suspended her without pay) was not an adverse employment action under the substantive provision of Title VII.

IV

The fact that Jones's initial suspension with pay was not an adverse employment action eviscerates much of Jones's appeal but doesn't doom it entirely. Therefore, we turn to her specific claims under Title VII, the PHRA, and the Constitution. Her statutory claims turn on whether summary judgment for SEPTA was appropriate on the Title VII claims. "[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently," *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d

561, 567 (3d Cir. 2002), and Jones identifies no relevant distinction here. Furthermore, Outlaw was a defendant on the PHRA counts of the complaint and not on the Title VII counts, and his liability as an "aide[r] and abett[or]" under the PHRA hinges on SEPTA's liability. App. 1119 (Am. Compl. ¶¶ 62, 66); *see Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996). Our main inquiry, then, is whether the District Court erred in granting summary judgment to SEPTA on Jones's claims of gender discrimination and retaliation under Title VII.

A

1

To state a prima facie case of gender discrimination, the District Court said, Jones was required to "show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) the particular disciplinary measure was an adverse employment action; and (4) the circumstances of the disciplinary measure give rise to an inference of discrimination." *Jones*, 2014 WL 3887747, at \*3. We see no error in this formulation. *See Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) ("The elements of [the] prima facie case . . . must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination.").

To the extent that Jones's discrimination claim is based upon her initial paid suspension, her claim fails for want of an adverse employment action for the reasons stated herein. *See supra* Part III. To the extent that her claim is based upon her subsequent suspension without pay and termination, however, we agree with the District Court that the chief defect of her claim lies in the final element of the prima facie case—the requirement of "some causal nexus"

8

between her gender and her adverse treatment by SEPTA. *Sarullo*, 352 F.3d at 798. The record is devoid of evidence supporting an inference that Jones's suspension without pay and termination were products of discrimination instead of the natural result of SEPTA's investigation into the allegations of timesheet fraud.

Jones's briefs are "not a model of clarity," SEPTA Br. 34, but her main contention on this point seems to be that a reasonable jury could draw an inference of discrimination because SEPTA declined to punish male employees who engaged in the same alleged misconduct as she. *See Filar v. Bd. of Educ.*, 526 F.3d 1054, 1061 (7th Cir. 2008) ("All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination."). Jones points to evidence that at least one male SEPTA employee, John Solecki, was permitted by Outlaw to underreport his vacation time to compensate him for unpaid overtime work. But even if this practice was against SEPTA rules, it was materially different from Jones's misconduct because Solecki did not fraudulently claim pay for work he never performed. Because of this distinction, the treatment of Solecki could not support an inference that Jones's suspension without pay and termination were motivated by discrimination rather than by SEPTA's good-faith conclusion that Jones submitted false timesheets.

2

Jones also argues that she was the victim of a hostile work environment. In *Meritor Savings Bank, FSB v. Vinson*, the Supreme Court held "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." 477

9

U.S. 57, 66 (1986). The Court went on to hold that workplace sexual harassment can be actionable under such a theory, so long as it is "sufficiently severe or pervasive." *Id.* at 67.

In a pair of later cases, the Court elaborated on when an employer can be held vicariously liable under Title VII for harassment of an employee by her supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Those decisions distinguished between "(1) harassment that 'culminates in a tangible employment action,' for which employers are strictly liable, and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense." *Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004) (citations omitted). This defense, which has come to be known as the *Faragher–Ellerth* defense, applies when the employer "exercised reasonable care to avoid harassment and to eliminate it when it might occur" and the complaining employee "failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Faragher*, 524 U.S. at 805.

Jones claims she has cited sufficient evidence of severe or pervasive sexual harassment by Outlaw. The District Court said this was irrelevant even if true, *Jones*, 2014 WL 3887747, at *5 & n.3, and we agree. Even if Jones had evidence of severe or pervasive sexual harassment, SEPTA was entitled to the *Faragher–Ellerth* defense.

First, the defense is available to SEPTA because any sexual harassment of Jones by Outlaw did not "culminate[] in a tangible employment action." *Faragher*, 524 U.S. at 808. The Supreme Court has defined a "tangible employment action" as "a significant change in employment status, such as

10

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Regardless of whether this term means precisely the same thing as "adverse employment action," we think it clear that neither phrase applies to Jones's initial paid suspension, which is the only action that Jones can link to the alleged harassment. As the District Court observed, SEPTA's decisions to suspend Jones without pay and then terminate her were "based on the OIG investigation report, which itself relied on information independent from what was produced by Outlaw." *Jones*, 2014 WL 3887747, at *6.

Second, SEPTA satisfies both prongs of the *Faragher–Ellerth* defense on the merits. As the District Court noted, SEPTA took several steps in response to Jones's allegations of harassment: it conducted an investigation, made findings, developed a "plan of action," required Outlaw to attend a counseling session, and gave him a demerit on his evaluation. *Id.* at *7. Jones claims that this is not enough, but her arguments are unconvincing. Although it appears Outlaw never received training on SEPTA's sexual harassment policy until after she complained, Jones identifies no authority showing that this precludes SEPTA from asserting the *Faragher–Ellerth* defense. She also highlights Outlaw's admission that he did not comply with SEPTA policy when he asked her to step on his back, but she doesn't explain how this fact supports imposing vicarious liability on SEPTA. Jones further objects that Outlaw was given only a "slap on the wrist," Jones Br. 26, but a showing that discipline was imposed is not required to prove that an employer's remedial action was adequate, *see Knabe v. Boury Corp.*, 114 F.3d 407, 413 (3d Cir. 1997). Indeed, a light punishment may have been suitable in view of SEPTA's finding that Outlaw's only proven misconduct was

11

the spine-stepping incident. Finally, Jones attacks SEPTA's harassment policy for encouraging employees to report harassment to their supervisors, suggesting that the policy failed because her supervisor was Outlaw. But the policy states that an employee is expected to "[r]eport any incident immediately to his/her supervisor *or* to SEPTA's EEO[ Office]," and any sensible employee would surely go the EEO route instead of complaining only to the very person committing the harassment. App. 703 (emphasis added).

That brings us to the second *Faragher–Ellerth* prong, which is even less favorable for Jones. Jones worked for Outlaw for about 10 years, and she asserts that she was subject to "pervasive" sexual harassment the entire time. Reply Br. 10. Despite 10 years of alleged harassment, she admits that she never made a complaint until Outlaw accused her of timesheet fraud, despite the fact that she knew that the EEO Office fielded such complaints—in fact, she had previously worked in SEPTA's Office of Civil Rights, apparently the EEO Office's predecessor. App. 145–46, 872; *see* SEPTA Br. 47–48. This demonstrates that Jones "failed to act with . . . reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Faragher*, 524 U.S. at 805. Even if Jones could offer evidence of severe or pervasive sexual harassment by Outlaw, therefore, her hostile work environment claim fails because no reasonable jury could hold SEPTA liable for such harassment. Accordingly, we will affirm the District Court's summary judgment on Jones's statutory claims of gender discrimination.

B

The other statutory claim at issue arises under the antiretaliation provision of Title VII, 42 U.S.C. § 2000e-3(a).

12

"A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Allstate*, 778 F.3d at 449 (internal quotation marks omitted). Jones posits that her suspension by Outlaw and her termination by SEPTA were retaliation against her informal complaints to Outlaw about his behavior and her formal complaint to the EEO Office. Outlaw's suspension of Jones with pay was not actionable retaliation, however, because Jones has identified no evidence showing that her alleged informal complaints caused Outlaw to suspend her. Therefore, we must focus on whether a reasonable jury could conclude that SEPTA's decisions to suspend Jones without pay and then terminate her were acts of retaliation.

Jones's claim fails because there is no evidence that her complaints of harassment caused SEPTA to discharge her, and her efforts to establish a causal connection go nowhere. First, Jones claims that "she never falsified her timesheets" and suggests that this supports an inference that SEPTA's actions were motivated by a desire for revenge rather than a bona fide belief that Jones had stolen wages. Jones Br. 51. The District Court found no evidence supporting Jones's denial of wrongdoing, however, and also rightly noted that showing that an employer incorrectly found an employee guilty of misconduct is insufficient to prove retaliation anyway. *See Jones*, 2014 WL 3887747, at \*10–11 & n.7; *see also Fuentes*, 32 F.3d at 766–67.

Jones also makes much of numerous alleged defects in OIG's investigation of her timesheet submissions, arguing that these imperfections are evidence of bad faith and

"animosity" on SEPTA's part. Jones Br. 47. She says, for example, that OIG interrogated her "by ambush" about the timesheet fraud; didn't allow her to review the timesheets in question during that session; didn't investigate whether someone besides Jones tampered with her timesheets; and didn't look into whether any timesheet discrepancies were resolved by "adjustment forms" filed by Jones. *Id.* at 47–48, 54. Each of these grievances is either unfounded or too petty to serve as evidence of retaliation, and the District Court did not err in treating them as such. *See Jones*, 2014 WL 3887747, at *12–13.

Jones also argues that a reasonable jury could find retaliation here on a "cat's paw" theory of liability. In *Staub v. Proctor Hospital*, the Supreme Court interpreted a federal statute prohibiting employment discrimination against members of the military to make employers liable when an employee's "supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and . . . is a proximate cause of the ultimate employment action." 562 U.S. 411, 422 (2011) (footnote omitted). In *McKenna v. City of Philadelphia*, we approved the extension of this theory of liability to the Title VII context. 649 F.3d 171 (3d Cir. 2011). Jones argues it applies here because, even if there is no direct evidence that SEPTA's decision to terminate her was discriminatory, Outlaw's accusation of timesheet fraud was driven by animus and contributed to Jones's termination.

Even if Jones did produce evidence that Outlaw's accusation was based on animus, her resort to the cat's paw theory would still be unavailing. It may be true that Outlaw's conduct was a but-for cause of Jones's termination, as she may never have been fired for timesheet fraud had Outlaw not

14

reported the matter to OIG. But *proximate* cause is required in cat's paw cases, and that requires "some direct relation between the injury asserted and the injurious conduct alleged" and excludes links that are "remote, purely contingent, or indirect." *Staub*, 562 U.S. at 419 (internal quotation marks omitted). The *Staub* Court declined to adopt a "hard-and-fast rule" that an employer's intervening exercise of independent judgment (*e.g.*, between the supervisor's biased report of employee wrongdoing and the termination of the employee) precludes a finding of proximate cause. *Id.* at 420. But the Court did indicate that proximate cause will not exist when the employer does not rely on the "supervisor's biased report" in taking the ultimate adverse action. *Id.* at 421 (noting that it "is necessary in any case of cat's-paw liability" that "the independent investigation rel[y] on facts provided by the biased supervisor").

Here, Jones offers no evidence that Outlaw influenced the OIG investigation or SEPTA's termination decision beyond getting the ball rolling with his initial report of timesheet fraud. The only evidence Jones cites in support of her cat's paw theory is that Outlaw conducted the initial investigation of Jones's timesheets; OIG interviewed Outlaw and informed him of Jones's harassment claims; and Outlaw communicated with OIG and the SEPTA official who determined Jones committed timesheet fraud. As the District Court acknowledged, though, the record also shows that SEPTA decided to terminate Jones "based on an investigation independent from Outlaw" that relied on forensic handwriting analysis (to determine if the signatures on Jones's timesheets were phony) and "email, computer, and building access records." *Jones*, 2014 WL 3887747, at *12. This case is a far cry from *McKenna*, where there was no evidence that the employer relied on anything besides the allegedly biased

15

supervisor's say-so in deciding to terminate the employee. *See* 649 F.3d at 179. Here, undisputed evidence excludes the possibility that SEPTA merely "adopted [Outlaw's] biased account of the events." *Id.* For those reasons, we agree with the District Court that cat's paw liability does not apply here.

In her only other attempt to conjure a causal connection between her complaints of sexual harassment and her termination, Jones notes that we have previously held that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). But Jones ignores other cases holding that "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). We reject Jones's suggestion that a gap of nearly three months (between Jones's harassment complaint and SEPTA's determination that she committed timesheet fraud) raises a red flag, especially when SEPTA spent those three months on a thorough investigation into her alleged malfeasance. Because a reasonable jury could not find a causal link between her allegations of harassment and any adverse employment action, we will affirm the District Court's summary judgment on the retaliation claims.

C

Jones's remaining claims arise under 42 U.S.C. § 1983 and allege violations of the Fourteenth Amendment. The District Court held that Jones forfeited her constitutional claims by failing to mention them in her response to SEPTA and Outlaw's motion for summary judgment. *See Jones*, 2014 WL 3887747, at *14. Although Jones's response did mention

those provisions (if only fleetingly, *see* Supp. App. 324, 335), we will nevertheless affirm the Court's judgment on the constitutional claims. *See Hughes v. Long*, 242 F.3d 121, 122 n.1 (3d Cir. 2001) ("We may affirm a District Court's judgment on grounds other than those considered by the District Court itself."). First, Jones expressly waives her constitutional claims against SEPTA on appeal. Jones Br. 62 n.4. Second, in support of her constitutional claims against Outlaw, she makes no affirmative argument that is distinguishable from her statutory arguments and provides no coherent reason why her evidence succeeds under § 1983 even if it fails under Title VII. In the absence of such argument, we will not disturb the District Court's summary judgment for SEPTA and Outlaw. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs." (citation omitted)).

\*       \*       \*

For the reasons stated, we hold that Jones's suspension with pay did not constitute an adverse employment action under the substantive provision of Title VII. And any adverse actions Jones did suffer were not sufficiently linked to any alleged misconduct to support a claim of discrimination or retaliation. Accordingly, the District Court did not err in entering summary judgment for SEPTA, and we will affirm that order.

17