NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2888
_____

RICHARD A. STERRETT,
                              Appellant

v.

GIANT EAGLE, INC.;
GIANT EAGLE INC, d/b/a OK Grocery Company;
OK GROCERY COMPANY INC;
GENERAL WAREHOUSEMEN & EMPLOYEES LOCAL 636,
affiliated with the International Brotherhood of Teamsters
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-14-cv-00235
District Judge: The Honorable Nora B. Fischer

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 6, 2017

Before: SMITH, *Chief Judge,* HARDIMAN, and KRAUSE, *Circuit Judges*

(Filed: March 7, 2017 )
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SMITH, *Chief Judge.*

Plaintiff Richard Sterrett was a union maintenance worker in the warehouse of Defendant OK Grocery Company, Inc., a division of Defendant Giant Eagle, Inc. (collectively, "Giant Eagle"). Sterrett was a member of Defendant General Warehousemen & Employees Local 636 (the "Union"). After Sterrett was fired, he brought a breach of contract claim and two claims under the Family and Medical Leave Act of 1993 ("FMLA") against Giant Eagle and a claim for breach of the duty of fair representation against the Union. The District Court granted Defendants' motion to dismiss the breach of contract and duty of fair representation claims and then later granted Giant Eagle's motion for summary judgment on the FMLA claims. Sterrett appealed the judgment on all four claims. After de novo review, we agree that Sterrett's claims are meritless, and we will affirm.

# BACKGROUND[1]

Starting around 1993, Sterrett began suffering from migraine headaches. Sterrett became a warehouse maintenance worker for Giant Eagle on March 31, 2007. In May 2010, Sterrett applied for and was granted intermittent FMLA leave from his employment at Giant Eagle. Sterrett claimed that he experienced a pattern of hostility in response to his taking FMLA leave, particularly from his

[1] Our recitation of the facts is slightly complicated by the requirement that we apply a different factual standard of review to both the breach of contract and duty of fair representation claims, which were dismissed on a motion to dismiss, from the FMLA claims, which were dismissed on a summary judgment motion.

For the breach of contract and duty of fair representation claims, which were dismissed at the motion to dismiss stage, we look to the First Amended Complaint and documents integral to that complaint, such as the Last Chance Agreement, to determine if Sterrett's claims "lack facial plausibility" when we "accept[] all well-pleaded allegations in the complaint as true and view[] them in the light most favorable to the plaintiff," disregarding any "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (internal quotation marks omitted) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011), and *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

For the FMLA claims dismissed at the summary judgment stage, we look to see if Giant Eagle has shown it is entitled to judgment as a matter of law because there is no genuine dispute of material fact based upon the record, "view[ing] the underlying facts and all reasonable inferences therefrom in the light most favorable to" Sterrett. *P.R.B.A. Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 223 (3d Cir. 2015); Fed. R. Civ. P. 56(a), 56(c)(1).

Even if our recitation of facts appears to mix allegations from the complaint and the Last Chance Agreement with evidence taken from the record, we have not considered any record evidence when reviewing the breach of contract and duty of fair representation claims.

direct supervisor, Jeff Chulack. After every day Sterrett took FMLA leave, he would find a generic warning about FMLA abuse at his toolbox. One day when Sterrett shut his toolbox to leave, Chulack said, "oh, another migraine Monday." Apx. 326; *see also* Apx. 153. Another employee, Tom Kinsel, relayed Chulack's belief that Sterrett was taking FMLA leave to work on his house and Chulack's comments that Sterrett was taking "another headache day" to Sterrett. Apx. 325–26; *see also* Apx. 153. Additionally, among other things, Chulack caused Sterrett not to be invited to HAZ/MAT refresher training despite Sterrett's seniority in the department and refused to give Sterrett a special key "that opens up every lock in the building" even though other maintenance workers had that key and Sterrett had asked for it on two occasions. Apx. 322. Without such access, Sterrett could not watch sports on Chulack's big screen TV during work hours like other maintenance workers. Sterrett also asserted that Giant Eagle had been unfairly scrutinizing his successive requests for leave and pointed to an incident where leave was temporarily denied because the person who processed the forms was on vacation.

At some point, Sterrett took a day off to grieve the death of his "aunt." Either because the "aunt" was not technically related to Sterrett—she was his "step dad's new companion"—or because Sterrett failed to "request[] a bereavement

4

day," the company discharged Sterrett "for Dishonesty, using Bereavement Leave for improper purposes, and Theft of Time." Apx. 91, 330–31; see also Apx. 147. To "get [his] job back," Sterrett entered into the Last Chance Agreement ("LCA") on July 7, 2011. Apx. 330–31; *see also* Apx. 147.

Paragraphs 4 and 5 of the LCA state:

> 4. In the event that Sterrett is determined by the Company to have committed any dishonest act, or falsified any Company document or information provided to the Company, at any time during the remainder of his employment with OK Grocery Company, the Company will have the right to discharge Sterrett for cause and no prior warning will be required.
>
> 5. If Sterrett is discharged pursuant to any provision of this Agreement, the Union and Sterrett agree not to file any NLRB charge, grievance, lawsuit, or any other legal or administrative proceeding against the Company in connection with such discharge. If discharged, Sterrett also agrees not to file any NLRB charge, lawsuit or any other legal or administrative proceeding against the Union in connection with such discharge.

Apx. 92.

On the night shift beginning October 11, 2013, Sterrett clocked in before 11:00 PM. During that shift, he suffered a migraine so severe that he could barely work. Over roughly five-and-a-half hours, Sterrett only changed two batteries. He spent much of those five-and-a-half hours lying down in the locker room in the

5

dark or in the break room. Finally, around 4:30 AM, he called the night shift supervisor and took FMLA leave but did not clock out.

The next day, Chulack reviewed records to generate payroll. Because the payroll system flagged Sterrett's failure to clock out, Chulack reviewed surveillance tapes at a high speed to determine when Sterrett left. Chulack concluded that Sterrett left around 4:30 AM. Because it seemed from his high-speed review that Sterrett had not been working, Chulack reviewed the tapes again at normal speed a day later. then created a handwritten summary documenting Sterrett's failure to work.

Chulack provided the summary to Operations Manager James A. Hilzendeger. Hilzendeger had HR manager William Guy interview Sterrett. At the interview, Sterrett admitted that he had only changed two batteries during his October 11–12 shift and that he had not informed any superiors about his inability to work. Following that interview, Sterrett was removed from the work schedule. On October 18, 2013, Sterrett and his union representative met with Giant Eagle representatives, including Hilzendeger.

On October 31, Hilzendeger mailed a letter to Sterrett terminating his employment "for the separate and independent reasons of violation of the Last

6

Chance Agreement and" company policies regarding "Theft, Dishonesty, Sleeping, Starting, Quitting, Break Times, and Due Care." Apx. 455; *see also* Apx. 273.

In his First Amended Complaint, Sterrett alleged four counts against Giant Eagle and the Union. His first count charged that Giant Eagle had breached a collective bargaining agreement executed November 16, 2012 (the "2012 CBA") or the LCA when Giant Eagle fired him. His second count alleged that the Union had breached its duty of fair representation by "refus[ing] to prosecute a grievance on his behalf." Apx. 149–52. His third and fourth counts alleged that Giant Eagle had retaliated against Sterrett under the FMLA and had interfered with Sterrett's rights under the FMLA, respectively.

On February 25, 2015, the District Court dismissed the breach of contract and duty of fair representation claims at the motion to dismiss stage. *See Sterrett v. Giant Eagle, Inc.*, No. 14-235, 2015 WL 791401, at *1 (W.D. Pa. Feb. 25, 2015) (adopting and republishing the Chief Magistrate Judge's January 22, 2015 report and recommendation after de novo review).

On June 6, 2016, the District Court granted Giant Eagle's motion for summary judgment on Sterrett's FMLA claims. *See Sterrett v. Giant Eagle, Inc.*, No. 14-235, 2016 WL 3136905 (W.D. Pa. June 6, 2016), *adopting Sterrett v.*

*Giant Eagle, Inc.*, No. 14-235, 2016 WL 3166268 (W.D. Pa. Apr. 27, 2016). Sterrett appealed.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the legal questions in both sets of claims. *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 230 (3d Cir. 2011).

## ANALYSIS

## I. THE CONTRACT AND DUTY OF FAIR REPRESENTATION CLAIMS

With regard to Counts 1 and 2, we affirm for the reasons stated by the District Court. As to Count 1, the District Court correctly held that the LCA—not the 2012 CBA—governed the termination of Sterrett's employment. The LCA gives Giant Eagle the discretion to determine whether Sterrett committed an act of dishonesty and then to fire Sterrett at any time without Sterrett having a right to grieve or arbitrate claims relating to such a firing. *See Sterrett*, 2015 WL 791401, at *4–7. Giant Eagle exercised that discretion.

Thus, the arguments that Sterrett reiterated on appeal fail for the following reasons:

- Sterrett failed to plead facts that give rise to an inference that the 2012 CBA supplanted the LCA as to Sterrett. *See, e.g.*, *Daniel Adams Assocs., Inc. v.*

8

*Rimbach Publ'g, Inc.*, 519 A.2d 997, 1004 (Pa. Super. Ct. 1987) ("The party asserting a substituted contract . . . has the burden of proving that the parties intended to discharge the earlier agreement.").

- As the District Court held, the LCA's indefinite duration was not contrary to public policy because Sterrett could terminate the agreement by quitting. *See Sterrett*, 2015 WL 791401, at *7.

- The LCA's express terms barring grievances and arbitrability did not give way to a presumption of arbitrability because the LCA also gave Giant Eagle the discretion to determine when there had been a breach. *Cf. United Steelworkers of Am. v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1474, 1478 (3d Cir. 1992) (holding that a presumption of arbitrability remained in a last chance agreement because the settlement agreement "fail[ed] to specify who is to determine whether a violation has occurred").

- Giant Eagle did not waive its right to enforce the LCA by "continu[ing] to give notice of accumulated absentee days as required by the CBA." Sterrett Br. 31. Even were such behavior a "course of performance" as Sterrett alleges, *id.* at 31–32, we would still follow the clear text of the LCA. *See, e.g.*, *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986) (explaining that the goal of contract interpretation "is,

9

of course, to ascertain the intent of the parties as manifested by the language of the written instrument"); *see also* 13 Pa. C.S.A. § 1303(e)(1) ("[E]xpress terms prevail over course of performance, course of dealing and usage of trade . . . ."); Restatement (Second) of Contracts § 203(b) (similar).

Without a right to grieve and without a meritorious contract claim, Sterrett's duty of fair representation claim also fails. *See, e.g.*, *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ("In hybrid section 301 claims, a plaintiff 'must prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union and vice versa.'" (quoting *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993))).

## II. THE FMLA CLAIMS

With regard to Sterrett's FMLA claims, we affirm, largely for the reasons stated by the District Court. The District Court did not address the possibility that Sterrett's claims might proceed under a mixed-motive analysis. We do so here.

Under Third Circuit law, there may be two different ways of proving FMLA retaliation/interference: (1) pretext-based claims are assessed "under the burden-shifting framework in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), while (2) mixed-motive claims "have been assessed under the mixed-motive framework set forth in" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77

(1989) (O'Connor, J., concurring). *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012);[2] *see also* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions . . . .").

Assuming that all circumstantial evidence cases had to be analyzed as pretext cases, the District Court applied the familiar *McDonnell Douglas* burden-shifting test. *See Sterrett*, 2016 WL 3166268, at *4–8, *adopted by* 2016 WL 3136905. Applying that test, the District Court held that Sterrett's FMLA interference and retaliation claims failed because Sterrett failed to create a genuine dispute of material fact regarding whether Giant Eagle's proffered explanation for firing Sterrett—Sterrett violated the LCA by dishonestly staying clocked-in while failing to work—was pretext. *See id.* at *6. Sterrett argues that Giant Eagle's citation of company policies in its termination letter shows that the entire firing was pretextual because, according to Sterrett, he did not violate those company

---

[2] *Lichtenstein* stated that the mixed-motive framework was applied to "claims based on direct evidence." *Lichtenstein*, 691 at 302. In *Desert Palace, Inc. v. Costa*, the Supreme Court rejected this distinction between direct and indirect evidence with regard to Title VII discrimination claims. *See* 539 U.S. 90, 98–99 (2003) (holding that Title VII does not "require[] that a plaintiff make a heightened showing through direct evidence"). Because Sterrett failed to show a genuine issue of material fact that his FMLA leave was a motivating factor for the relevant decisionmaker, we assume without deciding that *Desert Palace* applies to FMLA retaliation claims.

11

policies and Giant Eagle was not allowed to fire him under any of those policies. While Giant Eagle cited the company policies in its letter, it also stated that the LCA violation was an "independent" reason to fire Sterrett. Apx. 455. Sterrett has failed to create an inference that the main reason for his firing—his committing a "dishonest act" under the LCA—was pretextual. Accordingly, we agree that Sterrett failed to produce evidence from which a reasonable jury could find Giant Eagle's reliance on the LCA violation was pretextual.

While Sterrett's argument was unclear on this point, he may have been arguing that his claim should proceed under a mixed-motive analysis. Out of an abundance of caution, we perform that analysis here.

In a mixed-motive case, a plaintiff "must ultimately prove that [his or] her protected status was a 'motivating' factor." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). To survive summary judgment on a mixed-motive claim, Sterrett was required to produce evidence that "is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case [as is necessary in a pretext action] to shift the burden of production." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995) (alteration in original) (emphasis omitted) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994), *abrogated on other grounds by O'Connor*

12

*v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996), *as recognized in Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235–36 (3d Cir. 1999)); *accord Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 2017 WL 393237, at *5 n.5 (3d Cir. Jan. 30, 2017). Moreover, retaliation claims can generally survive summary judgment only when the plaintiff raises a genuine issue of material fact about the decisionmaker's motive and knowledge—not the motive and knowledge of other coworkers. *Cf. Lichtenstein*, 691 F.3d at 297–300, 307–09 (analyzing the decisionmaker's motive and knowledge); *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 516 (3d Cir. 1997) (explaining that "the fact that a decisionmaker received a memorandum containing a statement that allegedly reflects retaliatory animus does not show that the decisionmaker shared that retaliatory animus").

Here, the closest Sterrett comes to producing such "revealing" evidence is his discussion of Chulack's "course of antagonistic conduct" toward him. Sterrett Br. 48. But Chulack was not the decisionmaker; Hilzendeger was.

In some cases, the hostility of a nondecisionmaker like Chulack can create an inference of discriminatory animus under the "cat's paw" theory. We allow plaintiffs to proceed under a cat's paw theory if a supervisor exhibiting discriminatory animus influenced or participated in a decision to take an adverse employment action and if such animus was a proximate cause of the ultimate

decision. *See McKenna v. City of Philadelphia*, 649 F.3d 171, 172, 177–80 (3d Cir. 2011); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011) ("[T]he requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort-law concept of proximate cause.").

Here, no reasonable jury could find that Chulack proximately caused Sterrett's firing because Hilzendeger's decision to fire Sterrett was based on an independent investigation that included Sterrett's own admissions. Our recent decision in *Jones v. SEPTA* shows why proximate cause could not be found here. In *Jones*, Jones' supervisor at SEPTA suspended her for "apparent fraud in her timesheets." 796 F.3d 323, 324–25 (3d Cir. 2015). Jones claimed that her supervisor sexually harassed her. *Id.* at 325. Jones' supervisor referred the timesheet-fraud matter to SETPA's Office of Inspector General ("OIG"). *See id.* The OIG concluded that Jones had "collected pay for days she hadn't worked by submitting fraudulent timesheets." *Id.* SEPTA subsequently "formally terminated her" employment. *Id.* We held that there was no proximate cause because "Jones offer[ed] no evidence that [her supervisor] influenced the OIG investigation or SEPTA's termination decision beyond getting the ball rolling with his initial report of timesheet fraud." *Id.* at 331.

Here, as in *Jones*, it is insufficient to show that Chulack "g[ot] the ball rolling with his initial report" that Sterrett failed to work during his shift. The only other allegations in Sterrett's brief of Chulack's involvement in the termination were that (1) Chulack "set up" Sterrett by "selecting . . . 5 hours for payment of wages to [Sterrett] and then complaining that [Sterrett] got paid" and (2) Chulack "tr[ied] to build a case against" Sterrett by emailing the night shift supervisor to ask when Sterrett clocked out. Sterrett Br. 48. First, nowhere does Sterrett offer any fact or law showing that Chulack had discretion about how much of Sterrett's clocked-in time to put in the payroll system. Second, there is no fact that supplies even an inference that Chulack's email to Sterrett's supervisor ever reached any decisionmaker, and, in any event, the response to Chulack's email provided no evidence to any Giant Eagle employee that was not cumulative of Sterrett's own admissions.

In his reply, Sterrett also argues that Chulack could somehow have overridden Hilzendeger's decision to fire him. In support, Sterrett cites nothing more than a bare allegation in his Amended Complaint. It has long been true on summary judgment that "[t]he nonmoving party cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings." *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Celotex Corp. v.*

15

*Catrett*, 477 U.S. 317, 322–23 (1986)).  Therefore, Sterrett has failed to show that any of Chulack's behavior was a proximate cause of his termination.  There were no facts from which a reasonable jury could find that Chulack's animus infected Hilzendeger's decisionmaking.  Accordingly, no mixed-motive claim can survive summary judgment.

For the aforementioned reasons, we will affirm.