**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2535
_____

LONNELL HUGHES,
                    Appellant

v.

ALLEGHENY COUNTY AIRPORT AUTHORITY, a/k/a Pittsburgh International
Airport; LABORERS LOCAL UNION NO. 1058
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2-15-cv-00221)
District Judge:  Honorable Nora B. Fischer
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 6, 2018
Before:  SHWARTZ, KRAUSE and FISHER, Circuit Judges

(Opinion filed March 15, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Lonnell Hughes, proceeding pro se, appeals an order of the United States District Court for the Western District of Pennsylvania granting summary judgment for the Allegheny County Airport Authority in his employment discrimination action. For the reasons that follow, we will affirm the judgment of the District Court.

Hughes is a black male who has worked for the Airport Authority as a laborer since 2001. Hughes averred in his amended complaint that he was not permitted to take a test needed to qualify for a driver position, that two white employees were permitted to take the test, and that one of these employees received the job. Hughes alleged that he complained to Director Paul Hoback, who asked him not to go to the Airport Authority Board. Hughes stated that he was denied other job bids, given notices for failing to clock in, and intentionally scheduled for a drug test when he needed to take prescribed medication. Hughes alleged that he complained about the drug test and was then placed on administrative leave. He also alleged that he was denied positions in retaliation for prior complaints that he had brought against the Airport Authority. Hughes asserted claims of race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.

Following discovery, the parties filed cross-motions for summary judgment. The District Court analyzed Hughes' race discrimination claims under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The District Court ruled that Hughes had not established a prima facie case of discrimination

as to any of the Airport Authority's alleged unlawful actions.  The District Court also ruled that Hughes had not established a prima facie case of retaliation because he had not shown that he had suffered an adverse employment action or because he had not shown a causal connection between his protected activity and the adverse action.  The District Court granted the Airport Authority's summary judgment motion and denied Hughes' motion.  This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our standard of review is plenary.  Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 256 (3d Cir. 2017).

The Airport Authority asserts that we should deem Hughes' appeal waived due to the inadequacy of his brief.  Although Hughes did not include citations to the record or relevant legal authority in his brief, he has set forth facts that he contends support his discrimination claim.  We will not address all of the District Court's rulings, but we will entertain the assertions in Hughes' brief in light of his pro se status.

Hughes primarily contends that he was denied an appointment for a road test needed to qualify for a driver position.  He asserts that he had all of the other qualifications for the job, that the Airport Authority provided two white employees appointments for the road test with instructor Ron Burkhart, and that he was told that he would have to pursue the test on his own.

The record reflects that in 2013 the Airport Authority posted two driver positions, which required a Pennsylvania Class "A" commercial driver's license ("CDL") with tank/hazmat and passenger endorsements.  Hughes had a CDL with tank/hazmat

3

endorsements, but he did not have a passenger endorsement.  According to Airport Authority Human Resources Manager Cheryl Frasca-Shaw, employees are responsible for obtaining CDLs and endorsements, which are issued by the Pennsylvania Department of Transportation.  Frasca-Shaw stated that the Airport Authority regularly provided employees seeking to obtain licenses or endorsements with instructor Ron Burkhart's contact information, but it did not require that Hughes take the test with him.  Frasca-Shaw stated that the Airport Authority did not employ Burkhart and that it had no ability to control whether Burkhart tested Hughes.  The posted driver positions were given to candidates who had all of the required endorsements.

Hughes testified at his deposition that all Airport Authority employees went through Burkhart, who works for Allegheny County, to get the passenger endorsement and Class A CDL.  He said that the standard practice is that someone from the Airport Authority calls Burkhart.  Hughes stated that his Superintendent, Tom Voelzke, made the appointment for him to get his Class A CDL and that Burkhart was his instructor.

Hughes testified that he first went to Burkhart on his own to get the passenger endorsement and that Burkhart told him that the bus used for the test was unavailable. Hughes went again and Burkhart told him he could not fit him on the test schedule. Voelzke then told Hughes to go see Burkhart for the passenger endorsement, but when Hughes went, Burkhart told him that no one had called him.  Burkhart accused Hughes of dropping names.  Hughes recognized that there are other places to get the passenger endorsement, but he stated that he would then have to pay for the test and he believed that

4

payment was not required if he took the test with Burkhart. He said that everyone who was given the opportunity to take the passenger endorsement test was white.

The District Court ruled that Hughes could not make out a prima facie case of discrimination against the Airport Authority for not hiring him for the driver position because he was not qualified without the passenger endorsement. Hughes, however, is not claiming that that the Airport Authority failed to hire him for the driver job; he is claiming that he was denied the opportunity to take the test needed to qualify for the job. See Am. Compl. at 3-4; Hughes Deposition at 137, 147. The District Court also ruled that, to the extent Hughes suggested that Burkhart had refused to schedule him for the test, Burkhart did not work for the Airport Authority, Airport Authority employees are not required to use him for testing, and any decision by Burkhart not to schedule him for testing is not attributable to the Airport Authority.

Although Burkhart does not work for the Airport Authority, the nature of the relationship between them is unclear. But even if we credit Hughes' testimony, there is insufficient evidence showing that the Airport Authority played a role in his inability to take the test. Hughes' testimony does not suggest that Burkhart refused to give him the test at the Airport Authority's direction. Hughes stated that Voelzke told him to take the test with Burkhart and that he believed the test was scheduled for him.

Hughes testified that someone at the Airport Authority told him to get the endorsement on his own, but he did not state who that was and it does not appear that he pursued the matter with Voelzke, who he said scheduled his tests. Assuming that a

refusal by the Airport Authority to schedule Hughes for the test constitutes an adverse employment action, there is insufficient evidence of such a refusal to survive summary judgment. We thus agree with the District Court's conclusion that Hughes did not establish a prima facie case of discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (an adverse employment action is an element of a prima facie case of employment discrimination).

Hughes, who was 56 years old at the time of his deposition, also asserts in his brief that the Airport Authority targets minority workers who are near retirement age with harassment. To the extent Hughes' amended complaint encompasses such a claim, the record lacks supporting evidence. Hughes testified that three black workers were forced out of their jobs, but there is no other evidence about their employment.

Finally, Hughes contends that the Airport Authority retaliated against him after he went to complain to the Airport Authority Board. To the extent this argument was adequately raised below, the record reflects that Hughes did not speak to the Board because he ran into Airport Authority Director Paul Hoback, who asked Hughes for a chance to address his complaints about how he was being treated. The record does not reflect that anyone but Hoback knew that Hughes went to speak to the Board. Hoback does not appear to have been involved in the alleged retaliatory actions thereafter, with the exception of the decisions to place Hughes on paid and unpaid administrative leave.

The Airport Authority produced evidence showing that Hughes was placed on paid leave for an evaluation because he had displayed anger when he was scheduled for a

6

drug test and had raised a concern as to workplace safety. He was given an unpaid leave of absence after a doctor found that he was not fit for work. Hughes disagreed that he had displayed anger and testified that the doctor did not tell him that he was not fit for work.

Assuming that Hughes engaged in protected activity when he complained to Hoback and attempted to speak to the Board, the District Court correctly noted that placement on paid leave is generally not an adverse employment action. Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015). In addition, there is insufficient evidence of a causal connection between Hughes' activity and his unpaid leave to survive summary judgment. See Carvalho-Grevious, 851 F.3d at 259 (a plaintiff must produce evidence sufficient to raise an inference that the protected activity was the likely reason for the adverse employment action). Hughes was placed on paid leave almost three months after he spoke to Hoback and unpaid leave thereafter. Although Hughes disagrees with the Airport Authority's reasons for the leave, the timing of the leave is not suggestive of retaliation and the record is devoid of evidence supporting an inference of retaliatory animus. To the contrary, Hughes testified that Hoback made an effort to help him after they spoke.

Accordingly, we will affirm the judgment of the District Court.