NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2714
_____

SEAN T. FRIEL,

Appellant

v.

STEVEN T. MNUCHIN,
Secretary of the Treasury, Department of the
Treasury, Internal Revenue Service Agency
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-19-cv-02559)
United States District Judge: Honorable Timothy J. Savage
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 26, 2021

BEFORE: GREENAWAY, JR., PHIPPS, and COWEN, Circuit Judges

(Filed: December 28, 2021)
_____

OPINION[*]
_____

COWEN, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiff Sean T. Friel appeals from the order of the United States District Court for the Eastern District of Pennsylvania granting the motion for summary judgment filed by Defendant Secretary of the Treasury.[1]  We will affirm.

I.

Friel has worked for the IRS since 2002.  This case arose out of a consensual romantic relationship that Friel had with Claudia Hernandez, an IRS supervisor.  When Friel began dating Hernandez, she was married to Nader Goudarzi, a supervisor employed in a different unit of the IRS.  Friel alleged that, as a result of this relationship, he was the victim of sex discrimination under Title VII, see 42 U.S.C. § 2000e, et seq.  Specifically, he complained of disparate treatment and a hostile work environment, and he also asserted that he was targeted for retaliation on account of his complaints of unlawful discrimination.

The IRS moved for summary judgment, and the District Court granted its motion.  According to the District Court:

> Friel has not established a link between any non-sexual harassment and sex discrimination.  Nor has he made out a *prima facie* case of sex discrimination or retaliation.  Even if he had made out a *prima facie* case of retaliation, the IRS is entitled to judgment because it has articulated a legitimate, non-discriminatory reason for his suspension and denial of a performance award which Friel has not rebutted with evidence of pretext.  Friel has also not shown severe or pervasive sexual harassment rising to the level of a hostile work environment.  Therefore, we shall grant the motion for summary judgment.

---

[1] Steven T. Mnuchin was the Secretary of the Treasury when the case was filed and decided in the District Court.  Janet L. Yellen now holds this position and is automatically substituted as the nominal party.  Fed. R. App. P. 43(c)(2).  Like the District Court, we refer to the Defendant as the Internal Revenue Service ("IRS").

Friel v. Mnuchin, 474 F. Supp. 3d 673, 681 (E.D. Pa. 2020).

## II.

In its thorough and well-reasoned memorandum opinion, the District Court determined that Friel had failed to make out a prima facie case of disparate treatment based on sex under McDonnell Douglas.[2]  According to the District Court, he did not establish that nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of unlawful discrimination, see, e.g., Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327 (3d Cir. 2015), because "[h]e has not shown that the employment actions were gender-based and that women in the same circumstances were treated more favorably," Friel, 474 F. Supp. 3d at 687.  With respect to Friel's hostile work environment claim, the District Court likewise concluded that (with one exception) Friel "points to no evidence demonstrating that his gender was a factor in the treatment he claims" to have suffered.  Id. at 693; see also, e.g., Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (stating that, to succeed on hostile work environment claim, plaintiff must establish that employee suffered intentional discrimination because of his or her sex).  Although he did cite a single instance of any unwanted overture (i.e., shortly after he had broken up with Hernandez, she tugged on his

---

[2] The District Court had subject matter jurisdiction over this discrimination action filed by a federal employee under 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-16(d).  We have appellate jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over a district court's summary judgment ruling.  See, e.g., Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

shirt and suggested that they should get back together), the District Court determined that no reasonable jury could find that this single isolated incident, which was brief, non-threatening, and did not interfere with Friel's work, was sufficient to create an objectively hostile work environment. See, e.g., Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005) (stating that isolated or single incident of harassment unless extremely serious does not establish hostile work environment and that, in determining whether conduct is sufficiently severe, totality of circumstances must be considered).

We agree with the District Court's disposition of Friel's disparate treatment and hostile work environment claims. Emphasizing the Supreme Court's recent ruling in Bostock v. Clayton County, 140 S. Ct. 1731 (2020), Friel attacks the District Court's determination that his treatment was not due to his sex. He insists that "[a]ll of the harassment [and disparate treatment] that he suffered was due to the relationship that he had with a supervisor and was grounded in his sex." (Appellant's Brief at 13.) According to Friel, "[t]here would have been no relationship were it not for his gender." (Id.) We observe that Bostock decided that "[a]n employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex." Id. at 1737. "Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids." Id. The Supreme Court confirmed that there are "countless [cases] where Title VII has nothing to say." Id. at 1742; see also, e.g., Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (recognizing that Title VII does not create general civility code for workplace). "[A] but-for test directs us to change one thing at a time and see if the outcome changes.

4

If it does, we have found a but-for cause." Bostock, 140 S. Ct. at 1739. As the District Court explained, "[t]here is no evidence that had Friel been female in a relationship with Hernandez, he would have been treated differently." Friel, 474 F. Supp. 3d at 693. "No reasonable jury could conclude that these actions were motivated by Friel's gender and that a woman in his place would have been treated differently." Id. In fact, Friel's counsel acknowledged during oral argument before the District Court that changing gender or sexual orientation would make no difference in this case.[3] (See, e.g., JA425-JA426 (indicating that he could not deny even though he wished he could that "Goudarzi would have probably reacted the same way whether it be a man or a woman with whom his wife was having an affair").) Friel also "concedes that there was only a single incident that could be characterized specifically as *sexual* harassment and that it, standing alone, would not establish a hostile work environment." (Appellant's Brief at 23; see also e.g., JA100 (Friel testifying that no one other than Hernandez sexually harassed him).)

In order to establish a prima facie claim of retaliation under Title VII, Friel must demonstrate that he engaged in protected activity under the statute, his employer took an adverse employment action against him either contemporaneous with or after the protected activity, and there is a causal connection between the protected activity and the adverse employment action. See, e.g., Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). According to the IRS and the District Court, Friel asserted "five

---

[3] We note that the District Court thereby did not ignore the Supreme Court's Bostock opinion, which was decided after the parties had briefed the summary judgment motion. On the contrary, it was specifically addressed at oral argument.

adverse employment actions": "(1) denial of his shift change requests; (2) the counseling memo that resulted from Hernandez's accusations; (3) the lower annual performance review; (4) a lack of promotion; and (5) suspension resulting in award ineligibility." Friel, 474 F. Supp. at 3d at 688 (noting that Friel did not contest IRS's characterization of his allegations).

With respect to the 2015 shift change, the February 10, 2016 counseling memo, and the performance evaluation (signed by Friel's supervisor on May 9, 2016), we agree with the District Court that they all pre-dated his protected activity. Friel contends that his protected activity began in late 2015 or early 2016, but he also acknowledges that he had received his desired work schedule in June 2015. In fact, he testified that "the shift changes started before the prior protected activity." (JA127.) "Friel engaged in protected activity when he filed EEO complaints on August 24, 2016, September 7, 2017 and November 7, 2018." Id. (citing JA198-JA205, JA208-JA219, JA220-JA231). The IRS acknowledges that the record showed that he first received EEO counseling from Adrienne Taylor on May 10, 2016, and, as part of this counseling, he complained about the evaluation he had just received.[4] In turn, the District Court correctly observed that Friel did not allege gender or other unlawful discrimination under Title VII in the complaints to TIGTA [the United States Treasury Inspector General for Tax Administration] and Hernandez (his romantic partner). See, e.g., Slagle v. Cty. of

---

[4] At his deposition, Friel said that he had first met with an EEO counselor named Michael Bailey some time in 2016. But "there is no documentation in the record of Friel's interactions with Bailey to show that he raised Title VII claims, as opposed to the many non-Title VII accusations Friel has asserted." (Appellee's Brief at 35-36 n.7.)

6

Clarion, 435 F.3d 262, 267-68 (3d Cir. 2006) (stating that Title VII's anti-retaliation provision does not apply to any charge, regardless of its content, vague allegations of "civil rights" violations do not meet low bar for participation, and plaintiff must "allege in the charge that his or her employer violated Title VII by discriminating against him or her on the basis of race, color, religion, sex, or national origin, in any manner.").

Similarly, the District Court appropriately concluded that the counseling memo, the performance evaluation, and any supposed failure to "promote" did not rise to the level of an adverse employment action. "In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 57; see also, e.g., id. at 68 (stating that employee's decision to report allegedly discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work). As the District Court explained, the counseling memo was only "advisory" in nature and merely warned of possible future consequences if Friel engaged in similar conduct in the future. Friel's overall performance score also did not change from 2015 to 2016 (his scores in two categories went down while the scores in two other categories increased). In fact, Friel received the same time-off award in 2016 as he had the previous year. With respect to "promotion," Friel admitted at his deposition that he had received all the grade and step increases to which he was entitled, and there was no evidence indicating that he had received these increases at a slower rate on account of any protected activity.

Finally, we agree with the District Court that, "[a]lthough the suspension was an

7

adverse employment action, Friel has not shown that it was causally connected to any protected activity." Friel, 474 F. Supp. 3d at 690. It also appropriately concluded that, even if Friel had shown a causal connection, the IRS articulated a legitimate, non-discriminatory reason for his suspension that Friel did not challenge with evidence of pretext. See, e.g., Moore, 461 F.3d at 342. "[Friel] first met with an EEO counselor in May 2016," but he was not suspended until September 2018, "two years and four months later." Friel, 474 F. Supp. 3d at 690; see also, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . Action taken (as here) 20 months later suggests, by itself, no causality at all." (citations omitted)). Additionally, "Friel was suspended for making unprofessional, inappropriate and threatening comments to Special Agent Vandiehl, the IRS Commissioner, and several supervisors." Friel, 474 F. Supp. 3d at 690 (citing JA71-JA72). Friel acknowledged that it is IRS policy to deny performance awards to suspended employees, and there was no evidence in the record that the executive panel members who ruled that he was not entitled to any exception were aware of his protected activity.

### III.

For the foregoing reasons, we will affirm the order of the District Court.