**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

––––––––––

No. 15-3302

––––––––––

DAVID HOLT, II,

                                    Appellant

v.

COMMONWEALTH OF PENNSYLVANIA;
STEVEN JOHNSON, Capt.;
KRISTAL TURNER-CHILDS, Sgt.;
PENNSYLVANIA STATE POLICE DEPARTTMENT;
LT. GERALD  BRAHL,  PA State Police Department;
CAPT. KATHY JO WINTERBOTTOM, PA State Police Department.

––––––––––

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 5-10-cv-05510)
Magistrate Judge:  Honorable David R. Strawbridge

––––––––––

Argued on September 22, 2016

(Opinion filed: March 20, 2017)

Before:  MCKEE, Chief Judge,[†] HARDIMAN, and RENDELL Circuit Judges

––––––––––

    [†] Judge McKee concluded his term as Chief of the U.S. Court of Appeals for the Third Circuit on September 30, 2016.

Brian M. Puricelli
Alexis Lehmann‡            [**Argued**]
Law Office of Brian Puricelli
2721 Pickertown Road
Warrington, PA 18976

        Counsel for Appellant


Claudia M. Tesoro            [**Argued**]
Office of Attorney General of Pennsylvania
21 South 12th Street
Philadelphia, PA 19107

        Counsel for Appellees

_____

O P I N I O N*

_____

**RENDELL**, Circuit Judge:

Sergeant David Holt, an African American State Trooper, sued his employer, the

Pennsylvania State Police ("PSP"), and three of his supervisors, Captain Johnson,

Lieutenant Brahl, and Captain Winterbottom, claiming race discrimination and retaliation

under § 1983 (Equal Protection Clause and First Amendment), Title VII, and the

Pennsylvania Human Relations Act ("PHRA") for conduct involving ten separate

episodes over a roughly three year period. This case was tried to a jury twice. Holt

secured favorable verdicts on some claims but not others. The Magistrate Judge set aside

_____

‡ After arguing the case before the Court, Ms. Lehmann withdrew her appearance in the appeal on January 12, 2017.
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

all but one of those favorable jury verdicts and granted judgment as a matter of law for the Defendants. Holt now appeals from those rulings and others.

We have struggled mightily in this case to understand which issues Holt has raised on appeal, even after holding oral argument and requesting two additional letters from the parties. As best we can tell, Holt's claims fall into two categories: challenges to the Magistrate Judge's judgments as a matter of law and challenges to certain procedural rulings during trial. We will proceed chronologically.

In short, we will affirm in part, reverse in part, and remand with instructions to reinstate one portion of the jury's verdict.

## I. BACKGROUND

Holt began his employment with the PSP in 1994 and attained the rank of sergeant in 2006. The conduct underlying Holt's claims began in late 2008. At this time, Holt was serving in Troop L, Reading Station under the command of Johnson.

### A. The Phillips Incident

Late in 2008,[1] a district justice complained to Holt's superiors that Holt was discussing a pending case of a colleague's mother, named Phillips, with the Assistant District Attorney outside the proper channels. Johnson initiated an Internal Affairs Division ("IAD") investigation into Holt that resulted in discipline. Winterbottom, one of the Defendants and Holt's future commander, was employed by Internal Affairs at this

---

[1] Because exact dates were not provided at trial for much of the conduct at issue, we relate approximate time periods.

time and worked on the investigation. Holt claims Johnson's initiation of the IAD investigation discriminated against him based on race in violation of § 1983.

### B. Non-Selection for Commander at Jonestown or Schuylkill Stations

After a series of other episodes, such as Johnson's removal of Holt from the Officer of the Day roster and Johnson's reassignment of Holt to Staff Services Sergeant, a less desirable position, Holt filed a complaint with the PSP's Equal Employment Opportunity ("EEO") Office alleging that Johnson had repeatedly discriminated against him based on race. The complaint was filed on April 6, 2009. Johnson learned of this complaint between April 6 and May 5, 2009.[2] Sometime in April, Johnson also "sustained" the investigation into the Phillips incident, which Holt claimed lack any basis.

Two months later, in July 2009, two station commander positions opened up within Troop L, one at Jonestown and one at Schuylkill Haven. Holt requested to be assigned to either position. Captain Johnson denied his request and instead assigned two white officers. Holt claims, among other things, that Johnson's adverse hiring decision violated Title VII because it was retaliation against Holt for filing the EEO complaint.

Then, in October 2010, Holt filed this lawsuit naming Johnson and the PSP.[3]

### C. Roll Call Comments Incident

---

[2] Holt had also filed a complaint with the Pennsylvania Human Resources Association in May in 2009, although there was no evidence that Johnson knew about this complaint.

[3] Holt later amended his complaint to include allegations against the remaining defendants as we recount below.

In the spring of 2011, Holt requested a voluntary transfer from Troop L to Troop T and requested further that he be assigned to the King of Prussia Station, rather than the Pocono Station. At Troop T, Lieutenant Brahl would become Holt's direct superior while Captain Winterbottom (formally of Internal Affairs and now heading Troop T) oversaw Brahl.

While Holt's transfer was pending, Brahl made several disparaging and offensive remarks about Holt to Holt's future colleagues at a roll call meeting. Witnesses testified that Brahl said Holt "was not wanted in Troop T," that he "was a lazy piece of shit," "stupid," and as long as he and Winterbottom were in charge, he would be "banished" to Pocono. J159. Brahl reportedly said that Holt was "another Wayne Mason," Mason being another black sergeant, and that "[he] got Wayne Mason out in a year, [he would] get Holt in six months." J159. Holt claims that Brahl's comments constituted race discrimination under the Equal Protection Clause in violation of § 1983.

Holt then emailed Winterbottom about his request to be assigned to King of Prussia and to voice his concerns about the comments that were being made by Brahl, which he had heard through the grape-vine. Winterbottom did not respond.

### D. The "Schizophrenic Memo" Incident

Upon Holt's acceptance to Troop T, Winterbottom assigned Holt to Pocono.[4] Then, after additional troubles with Brahl, Holt again emailed Winterbottom that he was

---

[4] Holt claimed that this decision was itself racially motivated and thus was a violation of Holt's equal protection rights. The jury agreed and found Winterbottom liable for violations of § 1983. It then awarded Holt damages, which were remitted to $100,000. Holt accepted this remittitur.

contemplating another discrimination complaint and to remind her of his lawsuit. They met on July 18, 2011, but Holt testified that the meeting went poorly, describing her response to his complaints as "nasty[,] confrontational[,]" and indifferent to his allegations of racial discrimination. J162.

In August 2011, Holt missed a deadline and was ordered by Winterbottom to explain why in a memorandum. He stated that he had missed it "inadvertently" as a result of "schizophrenic" instructions of his superiors. J2211. Winterbottom then initiated an IAD investigation into Holt on the ground that the memorandum was insubordinate and disrespectful, which resulted in discipline and loss of one day's pay. Holt claims Winterbottom's initiation of the investigation was, among other things, retaliation for his lawsuit in violation of his First Amendment rights.

## E. The Day Off Incident

Finally, in September 2011, Holt decided to take a day off but failed to inform Brahl. Brahl then initiated an IAD investigation into Holt for insubordination. Holt claims that this constituted race discrimination under the Equal Protection Clause in violation of § 1983.

## II. DISCUSSION

The Magistrate Judge had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the Magistrate Judge's order granting Defendants' motion for judgment as a matter of law, and we apply the same standard as the Magistrate Judge should have. *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 373 (3d Cir. 2016).

6

In sum, we agree with the Magistrate Judge's rulings arising from the Phillips Incident, the Roll Call Comments Incident, the Day Off Incident, the Schizophrenic Memo incident, and will affirm those. We part ways with the Magistrate Judge, however, on Holt's claim arising from Johnson's decision to not assign him to Jonestown or Schuylkill. Therefore, we will reverse that portion of the Magistrate Judge's order and remand for the Magistrate Judge to reinstate the jury's verdict.

## A. The Philips Incident

Holt claims that Johnson's initiation of the IAD investigation constituted race discrimination under § 1983. The first jury failed to reach a verdict and the Magistrate Judge granted judgment as a matter of law for the Defendants because the record lacked legally sufficient comparator evidence to support the claim, a ruling Holt does not challenge. Instead, Holt raises two procedural arguments. We reject both.

First, Holt argues that the Defendants waived their right to argue sufficiency of the comparator evidence in their renewed Motion for Judgment as a Matter of Law because they failed to raise the issue in their Rule 50(a) motion before the Magistrate Judge. "Under normal circumstances, a defendant's failure to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiffs on notice waives the defendant's right to raise the issue in their Rule 50(b) motion." *Williams v. Runyon*, 130 F.3d 568, 571-72 (3d Cir. 1997). To determine whether an issue has been raised, we look to the "the communicative content, specificity and notice-giving function of an assertion . . . judged in context." *Acosta v. Honda Motor Co.*, 717 F.2d 828, 832 (3d Cir. 1983) (internal quotation marks omitted). Here, Holt claims that a portion of 50(a) colloquy,

7

wherein the Magistrate Judge stated "I don't think [defense counsel] has any serious issue about Title VII" and that "Title VII's going to the jury," indicated that the issue of comparator evidence was waived. J1150. The Magistrate Judge, who was in a better position than us to interpret the effect this statement had on the parties before it, rejected this argument. With the notice-giving purpose of Rule 50 in mind, we find it incredulous that Holt was surprised by this line of attack. Holt's counsel herself raised the issue of comparator evidence during the colloquy and responded to it on the merits in opposition to Defendants' Rule 50(b) motion without raising waiver. We will affirm this ruling.[5]

Second, Holt challenges the denial of his motion to amend his complaint to add a First Amendment retaliation claim arising from Johnson's initiation of the IAD investigation. The Magistrate Judge found the amendment to be futile because Holt's statements and actions in the courtroom were not constitutionally protected activity. For speech to qualify for protection, it must "relate[] to broad social or policy issues." *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008) (quoting *Sanguigni v. Pittsburg Bd. of Pub. Educ.*, 968 F.2d 393, 397 (3d Cir. 1992)). Holt's statement, which was aimed solely at assisting his friend's mother in her own criminal case, failed to establish a nexus to any "broad social or policy issue." *Id*. We will therefore affirm the Magistrate Judge's ruling in this regard also.[6]

---

[5] For substantially the same reasons, we reject Holt's identical argument with respect to the Magistrate Judge's dismissal of his claims arising out of the Officer of the Day incident.

[6] We also reject Holt's argument that his motion for reconsideration was improperly denied, even in light of the Supreme Court's intervening decision in *Lane v. Franks*, 134 S. Ct. 2369 (2014). Even if we were to agree that the Magistrate Judge

8

## B. Holt's Non-Assignment to Jonestown and Schuylkill Haven Stations

Holt next claims that Johnson's failure to assign him to the Commander position at these stations constituted retaliation for his filing of discrimination complaints with the EEO under Title VII. The jury found Johnson liable for retaliation under Title VII, and awarded Holt $250,000 in compensatory damages.[7] The Magistrate Judge, however, granted judgment as a matter of law on the ground that Holt failed to establish a legally sufficient causal nexus between the decision not to appoint him and the complaints. Holt challenges this ruling. He argues that the Magistrate Judge failed to consider the record as a whole and points to other evidence from which the jury might reasonably draw a retaliatory inference. We agree with Holt and will reverse.[8]

To state a claim for retaliation, the plaintiff must show that "[1] he engaged in conduct protected by Title VII; [2] his employer took an adverse action against him either after or contemporaneous with the protected activity; and [3] a causal link exists between his protected conduct and the employer's adverse action." *Slagle v. Cty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006) (citations omitted). An employee may establish a causal

---

should have reexamined his earlier ruling, we fail to see how *Lane v. Franks* would help Holt's First Amendment argument. *Lane* held that a public employee's compelled, truthful testimony under oath was protected citizen speech, not unprotected employee speech. Clearly, Holt was neither under oath nor compelled when he voluntarily spoke with the ADA about his friend's mother's case. We will not disturb the Magistrate Judge's ruling.

[7] This amount was remitted to $50,000, a conditional ruling which Holt has not challenged on appeal.

[8] As the Magistrate Judge did, we dispose of Holt's claims under Title VII and the PHRA together since both claims are analyzed under the same legal standard. *Slagle v. Cty. of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006).

nexus if he shows "unusually suggestive" temporal proximity between the two events. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). "[W]hen temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may [also] look to the intervening period for other evidence of retaliatory animus." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997)). Circumstantial evidence of retaliatory animus may include a pattern of ongoing antagonism, inconsistencies in the employer's justifications, or any other "evidence gleaned from the record as a whole" that is sufficient to support an inference of retaliatory animus. *Id.* at 281.

In reviewing the Magistrate Judge's analysis, we are further cognizant of the fact that the jury was entitled to consider all of the facts in the record *together* in weighing whether there was a causal connection, "particularly when we consider, as we must, that the verdict may have been based in part on the jurors' evaluation of each witness' credibility and demeanor." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 924 (3d Cir. 1997). Applying this perspective, we think that a reasonable juror could conclude, based on "evidence gleaned from the record as a whole," that Johnson's hiring decision was causally related to Holt's discrimination complaint. *Farrell*, 206 F.3d at 281.

As the Defendants point out, some of the evidence Holt identifies on appeal—such as his reassignment to the Staff Services position and his being removed from the Officer of the Day roster—occurred before Holt's complaint and is therefore not probative of retaliatory animus. But Holt also points to Johnson's decision to sustain Holt's IAD

10

investigation, which occurred "sometime in April 2009." J172 n.18. In a footnote, the

Magistrate Judge discounted this evidence as insufficient.

Contrary to the Magistrate Judge's analysis, however, we think that the jury was

entitled to consider this conduct as circumstantial evidence of a retaliatory nexus. To

begin, we note that the Magistrate Judge's instructions to the jury emphasized that the

"connection may be shown in many ways." J2049. For example, he told the jury:

> [Y]ou may or may not find there's a sufficient connection through timing. That is, the State Police's adverse action followed shortly after they became aware of Plaintiff's complaints. Causation is, however, *not necessarily ruled out by a more extended passage of time*. For instance, you may also consider *any* ongoing antagonism shown toward Plaintiff or any change in demeanor toward plaintiff that may have occurred between the date of the protected activity and the date of the adverse action.

J2049-50 (emphasis added). Holt argued to the jury that Johnson's decision to permit the

Phillips IAD investigation to continue lacked any reasonable basis. In fact, Johnson

testified on cross examination that he permitted the investigation to continue based on his

"opinion" that Holt had interfered in an investigation, even though Johnson knew that

none of the parties involved in the investigation, including the PSP's investigating

officer, deemed it necessary to file a formal complaint against Holt. J1971. We think a

reasonable juror could conclude that this episode constituted "ongoing antagonism" per

the Magistrate Judge's instructions. Moreover, while the temporal proximity between the

protected activity and Johnson's decision, which was about two months, might not be

sufficient on its own to support a retaliatory inference, it was certainly relevant. The jury,

in finding retaliation, could properly consider this evidence as well.

11

In sum, the jury permissibly drew an inference that Johnson's hiring decision was retaliatory after listening to and determining the credibility of both Johnson's and Holt's explanations. We think it was error to set aside the verdict on this ground. We therefore will reverse the Magistrate Judge's order and remand for the Magistrate Judge to reinstate the jury's verdict and its damages award, subject to the conditional ruling limiting that award, which was not challenged on appeal.[9]

## C. Roll Call Comments

Holt claims Brahl's comments constituted race discrimination. The Magistrate Judge granted judgment as a matter of law, finding that the roll call comments did not constitute adverse employment action. Holt argues to the contrary that the comments tarnished his reputation and prevented him from securing a more prestigious assignment. We reject Holt's argument.

An adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). We have recognized, however, that "unnecessary derogatory comments," standing alone, do not rise to the level of adverse employment action. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301

---

[9] Because we reverse the Magistrate Judge's judgment as a matter of law on this claim and remand for him to reinstate the jury's verdict and damages award, we need not reach Holt's additional argument that his ruling violated our law of the case doctrine. Likewise, since we reinstate the whole award, we find it unnecessary to address Holt's arguments regarding his First Amendment claim arising from the same conduct.

12

(3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). On appeal, Holt has not pointed to any evidence that these comments, although plausibly racially motivated and certainly offensive, altered his "compensation, terms, conditions, or privileges of employment." *Jones*, 796 F.3d at 326.[10] Accordingly, we will affirm the Magistrate Judge's ruling on this claim.

### D. Schizophrenic Memo Incident

Next, Holt challenges the Magistrate Judge's dismissal of his claims arising out of the so-called Schizophrenic Memo incident. Holt claims that Winterbottom's initiation of the IAD investigation was retaliation for his filing of this lawsuit in violation of his First Amendment rights and discrimination based on race under the Equal Protection Clause. The jury found Winterbottom liable on both claims, and awarded Holt $200,000 in compensatory damages and $300,000 in punitive damages. The Magistrate Judge granted judgment as a matter of law in favor of Winterbottom on two grounds: (1) that Holt did not provide sufficient evidence to demonstrate racial or retaliatory animus; and, alternatively (2) that Holt's suit was barred by qualified immunity. We take no position on the first holding because we find the qualified immunity issue dispositive.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bayer v. Monroe*

---

[10] While we note that the jury instructions on this issue were less than clear and arguably could have permitted the jury to reasonably conclude that Holt had experienced an adverse employment action, Holt does not raise this as a basis for overturning the Magistrate Judge's ruling.

*Cty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Under our Circuit's precedent, Winterbottom's behavior did not violate a clearly established statutory or constitutional right.

We start with the First Amendment retaliation claim, for which a plaintiff must prove: (1) constitutionally protected conduct; (2) an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Our Circuit has not considered whether the initiation of an internal investigation can constitute an "adverse action" for purposes of a First Amendment retaliation claim, and our sister circuits are split on the issue. *Compare Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) ("Investigating alleged violations of departmental policies . . . [is] not [an] adverse employment action[.]"), *with Dahlia v. Rodriguez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (holding that placement on administrative leave pending discipline can constitute an adverse action for a First Amendment retaliation cases). This disagreement among our sister courts indicates that Winterbottom is entitled to qualified immunity. After all, "[i]f judges thus disagree on a constitutional question, it is unfair to subject [a public official] to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999).

We next consider Holt's racial discrimination claim, where we apply the *McDonnell Douglas* burden-shifting framework. *See Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431–32 (3d Cir. 1997). At the first step of the *McDonnell Douglas* framework, Holt must establish a prima facie case of discrimination, which includes

14

proving by a preponderance of the evidence that he suffered an "adverse employment action." *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003). In the Title VII context, we recently held that suspension with pay pending an internal investigation does not constitute an adverse employment action. *Jones*, 796 F.3d at 326–27. And because of the overlap between Title VII claims and constitutional discrimination claims, we have applied Title VII caselaw to equal protection claims. *See Stewart*, 120 F.3d at 431–33 (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), and *Bennun v. Rutgers State Univ.*, 941 F.2d 154 (3d Cir. 1991)). Given our holding in *Jones* and the close relationship between Title VII and equal protection claims, it would have been reasonable for Winterbottom to conclude that the initiation of an IAD investigation would not create liability under the Equal Protection Clause. She is thus entitled to qualified immunity. *See Mammaro v. N.J. Div. of Child Protection and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (qualified immunity applies unless "every reasonable official would have understood that what he is doing violates the law" (citations omitted)).

## E. Day Off Incident

Finally, we find it unnecessary to rule on Holt's claim of error arising from this incident because the Magistrate Judge, in his conditional rulings, found that any award of compensatory damages would constitute a double recovery. The Magistrate Judge also found that punitive damages were not permissible as a matter of law. Holt has not challenged either of these rulings on appeal. Therefore, even if Holt secured a favorable outcome on this claim here, he could not recover any damages on remand.

15

### III. Conclusion

For the foregoing reasons, we reverse the portion of the Magistrate Judge's order dismissing Holt's Title VII retaliation claim.[11] The Magistrate Judge should also reinstate the damage award for this claim, subject to its conditional ruling limiting that award. Otherwise, we affirm all the remaining rulings challenged on appeal.

---

[11] As we see it, this will entitle Holt to $50,000 for the Title VII claim against Johnson, which was conditionally limited at J225-26. This is in addition to the $100,000 remittitur Holt has already accepted from his claim arising from the Pocono assignment.