NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3302
_____

JAMES DURST,
                            Appellant

v.

CITY OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-17-cv-02933)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 15, 2019

Before: JORDAN, SCIRICA, and RENDELL, *Circuit Judges*

(Filed: January 14, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

James Durst brought a claim for employment discrimination under Title VII of the Civil Rights Act of 1964 against his former employer, the City of Philadelphia, alleging unlawful termination because of his race. The trial court granted summary judgment in favor of the City. We will affirm.

## I.

James Durst, a Caucasian male, worked as a code inspector for the City's Licenses and Inspections Department ("L & I Department") from September 2011 until his termination on April 28, 2016. The City terminated Durst after it determined he violated Section 10-108 of the Philadelphia Home Rule Charter, which prohibits City of Philadelphia employees from engaging in fraud or dishonesty.

Although code inspectors spend most of their work day "in the field" performing inspections, they are required to report in person to the office at the beginning of their shift. Inspectors are not allowed to begin their work day in the field without first obtaining supervisor approval. Despite his awareness of this rule and despite prior discipline for failing to follow it, Durst frequently began his work day in the field without permission. Hours after his shift began, he often emailed his supervisor, Ela Fernandez, informing her he started in the field that day. After Durst continued to ignore Fernandez's warnings that he needed her permission before starting in the field, Fernandez began forwarding his emails to her supervisor, Bernice Johnson, who served as the field operations manager. Around the same time, Johnson began receiving numerous

2

complaints from property owners and occupants regarding Durst's failure to show up for scheduled inspections and for wrongly reporting properties as code violations. After Johnson performed a field investigation into Durst's work, the City determined Durst had falsified multiple inspection violations, route sheets, and other City documents.

Following a disciplinary hearing, which Durst failed to appear for, the City sent Durst a notice of dismissal stating that he had violated Section 10-108 of the Philadelphia Home Rule Charter by failing to obtain permission before starting work in the field, traveling outside his authorized district, falsely claiming he never received reimbursement for mileage or training, and falsifying City documents. Durst appealed his termination to the Civil Service Commission, but failed to appear for his hearing. The Commission determined there was just cause for Durst's termination because the evidence showed he consistently falsely reported the conditions of the properties he allegedly inspected. Durst did not appeal the Commission's ruling.

Durst filed a charge with the Equal Employment Opportunity Commission on August 10, 2016, alleging unlawful termination on account of his race. He asserts the L & I Department's non-Caucasian management—specifically his supervisor, Ela Fernandez, and the field operations manager, Bernice Johnson—treated him less favorably than his fellow inspectors. He received a notice of right to bring suit and commenced this action in the Eastern District of Pennsylvania. The City filed a Motion for Summary Judgment.

The trial court granted summary judgment in favor of the City. The court found that Durst could not prove a prima facie case for racial discrimination. Durst failed to proffer any relevant comparators who were treated more favorably and merely asserted

3

his own subjective belief of discriminatory conduct, and even if Durst had set forth a prima facie case, the City established legitimate, non-discriminatory reasons for his termination that Durst was unable to rebut as pretextual. This appeal followed.[1]

**II.**

As we will explain, Durst failed to demonstrate a genuine issue of material fact. We concur with the trial court's assessment that the City is entitled to judgment as a matter of law. We evaluate Durst's discrimination claim under the familiar three-part analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Durst must first establish a prima facie case of discrimination. The burden then shifts to the City to show a legitimate, non-discriminatory reason for Durst's termination. Durst must then be given an opportunity to show the City's stated reasons were a pretext for discrimination. *Id*. at 802–03; *Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir. 1999).

To establish a prima facie case of race discrimination, Durst must show (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse

---

[1] The trial court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment *de novo*, applying the same standard the trial court applied in determining whether summary judgment was appropriate. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015). Summary judgment is proper when there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "material" if its adjudication bears on an essential element of the plaintiff's claim. *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002). When ruling on a motion for summary judgment, the court must consider the evidence in a light most favorable to the nonmoving party. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 (3d Cir. 2007).

employment action, and (4) the adverse employment action gave rise to an inference of unlawful discrimination.[2] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999). Durst presented no evidence supporting an inference that the City discriminated against him because of his race.

Durst attempts to show discriminatory intent through comparator evidence—he asserts four non-Caucasian inspectors engaged in similar misconduct, but the City never investigated or disciplined them. The trial court correctly determined the comparators Durst offered could not be used for the purpose of demonstrating discrimination because they were not similarly situated. Although "similarly situated" does not mean identically situated, the comparator must be similar in all relevant respects. *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). Relevant factors include whether the comparators had the same supervisor, were subject to the same standards, and had engaged in similar conduct. *Id.* Durst provides no relevant comparator evidence giving rise to an inference of discriminatory intent.

Durst alleges two fellow inspectors began work in the field without permission and were never investigated. But the record reveals that one of these inspectors never started in the field and the other inspector always obtained permission before starting in the field. Durst further argues another inspector falsified City documents and the City

---

[2] Because Durst is Caucasian, his claim is referred to as a "reverse discrimination" claim, which this Circuit recognizes. *See Iadimarco*, 190 F.3d at 158. But unlike other Circuits, this Circuit does not require the plaintiff to show "background circumstances" demonstrating the defendant is an unusual employer who discriminates against the majority. *Id.* at 160.

never investigated her, but he presents no evidence showing falsification. She also had a different supervisor. Lastly, Durst alleges the City failed to discipline an inspector who is a registered sex offender and inspected homes with children present. As the trial court properly pointed out, this inspector's alleged misconduct is not similar to Durst's and Durst merely provides his own unsubstantiated belief of misconduct. Durst does not provide relevant evidence permitting an inference of discriminatory intent and fails to make a prima facie case of race discrimination.

Even if Durst could assert a prima facie case of race discrimination, the City asserted numerous legitimate, non-discriminatory reasons for terminating him. The City found Durst in violation of the Philadelphia Home Rule Charter for failing to obtain supervisor permission before starting work in the field and falsifying his inspections. Durst's supervisor stated she had never received such a large number of complaints about a single inspector. The City's Integrity Officer believed Durst was a "danger to the public" because he failed to conduct actual inspections. J.A. 556a. Moreover, the Civil Service Commission concluded there was sufficient evidence to show he consistently falsely reported property conditions. Accordingly, the City points to legitimate, non-discriminatory reasons for terminating Durst.

Because the City carried its burden, Durst can only survive summary judgment if he can prove the City's articulated reasons were a pretext for racial discrimination. Durst fails to meet this burden.

Durst attempts to prove pretext by asserting the "cat's paw" theory, which provides that unlawful discrimination occurs when a nonbiased decision-maker is

6

influenced by a biased managerial employee. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015). Durst argues the City's decision to terminate him was tainted by Fernandez and Johnson's racial animus towards him. Durst's argument lacks evidentiary support. Nothing in the record shows or implies Fernandez or Johnson exhibited racial animus towards Durst.

Durst argues Fernandez showed racial animus towards him because she ignored his emails and allowed Christina Phillips, a non-Caucasian inspector, to start work in the field without permission. But the record established that Phillips always asked for permission before starting in the field and Fernandez sometimes denied her requests. Moreover, because Durst continued to start his day in the field without permission, despite Fernandez's warnings, Fernandez reported up the chain-of-command by forwarding his emails to Johnson, her supervisor. The record is devoid of any evidence showing Fernandez exhibited racial animus towards Durst.

Durst also asserts Johnson's choice to not interview him during her investigation of his work was rooted in racial animus, relying on *Mastro v. Potomac Electric Power Co.*, 447 F.3d 843 (D.C. Cir. 2006). Durst's reliance on *Mastro* is unpersuasive because his case involves a largely different set of facts. In *Mastro*, an African-American supervisor terminated the Caucasian plaintiff for lying about his subordinate who did not show up to work because he was incarcerated. The case turned on when the plaintiff learned about the subordinate's incarceration. *Id.* at 847–48. His termination centered mainly on an unsubstantiated statement made by a biased fellow employee about the plaintiff. *Id.* at 855–56. The court determined the investigation was faulty because the

7

supervisor had relied on an unconfirmed statement and never interviewed the plaintiff for his side of the story. *Id.*

Unlike the investigation in *Mastro*, the City thoroughly investigated Durst's misconduct after it received several outside complaints. Moreover, as the trial court pointed out, Durst's own emails and Johnson's investigation into his inspections both document and validate his misconduct.

Durst also tries to establish pretext by arguing he did not engage in misconduct. His argument is without merit. Aside from Durst's subjective opinion that he did not falsely report the conditions of the properties he allegedly inspected, the record presents no facts that would suggest the City's investigation into his work and subsequent findings were rooted in racial animus. The City is entitled to summary judgment.

**IV.**

For the foregoing reasons, we will affirm the judgment of the trial court.