NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2873

_____

SUZANNE F. TIELLE,

Appellant

v.

THE NUTRITION GROUP

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-17-cv-02417)
District Judge: Honorable Malachy E. Mannion

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 14, 2020

Before: AMBRO, JORDAN and SHWARTZ, <u>Circuit Judges</u>

(Opinion filed: May 7, 2020)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

AMBRO, Circuit Judge

Suzanne Tielle sued her former employer, The Nutrition Group ("TNG"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq.*, alleging TNG failed to accommodate reasonably her disability. Tielle further alleged TNG terminated her because of her disability and in retaliation for requesting accommodations. The District Court entered summary judgment for TNG on each of Tielle's claims, concluding that she failed to put forward sufficient evidence for a reasonable jury to find in her favor. We agree and hence affirm.

## I.[1]

Tielle was employed by TNG from 2009 to 2016 as head cook for a school district. When she began to work for TNG in 2009, she informed TNG representatives, including Regional Manager Patricia Baresse, that she had a knee injury. But Tielle did not request any accommodation at that time.

In 2014, TNG employees observed Tielle using a food cart to support her weight and assist her with walking. Baresse and other TNG employees met with Tielle in June 2014 and instructed her not to do this, noting that the cart could tip over, injuring her or others. Tielle asked to use a cane, and TNG agreed. But TNG employees continued to observe Tielle place her weight on the food cart.

---

[1] As we write solely for the parties, only those facts necessary to our decision are set out below. The facts are set out in the light most favorable to Tielle, the non-movant.

2

In June 2015, Baresse asked Tielle whether she would be returning to work in the fall. Tielle asked why, and—according to Tielle—Baresse responded, "because . . . of your problem." App. 88. And when Tielle said she would be returning, Baresse responded, "well think about it over the summer . . . but you better be able to walk better." *Id.*

Baresse returned to work in the fall of 2015. But in January 2016 Baresse and other TNG employees again confronted Tielle about her continued use of the food cart to support her weight. They warned her that continuing to do so would result in her termination.

But Tielle continued as before. In November 2016, Baresse and other TNG employees met with Tielle a third time. At this meeting, Tielle noted that "sometimes it is just quicker to use the cart instead of the cane." App. 148. Tielle attests that, during this meeting, Baresse said "something about a liability," but cannot recall whether Baresse was referring to her or the food cart. App. 79. For her part, Baresse maintains she told Tielle that "using the food cart to support her weight and assist her with walking was a liability because it was unsafe." App. 149. The same day, TNG terminated Tielle, purportedly for failing on multiple occasions to follow instructions not to place her weight on the food cart and to use her cane instead.

Tielle then brought suit. She alleged TNG failed to accommodate reasonably her disability by refusing to allow her to use the food cart to assist her with walking. She also alleged that her termination was in retaliation for requesting a reasonable

3

accommodation and/or because of her disability.  Following discovery, the District Court granted summary judgment to TNG on all claims.

II.[2]

The ADA[3] requires an employer to "reasonab[ly] accommodat[e]" the disabilities of its employees.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (quoting 42 U.S.C. § 12112(b)(5)(A)).  "Once a[n] . . . individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation."  *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630.9 at 359).

We agree with the District Court that no jury could find TNG failed to accommodate reasonably Tielle's disability.[4]  She asked to use a cane to help her walk, and TNG agreed to that reasonable accommodation.  There is no evidence that Tielle further requested to use the food cart to help her walk by placing her weight on it as opposed to using it merely for the purpose it was intended, to transport items.  At her

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.  Our review of the District Court's grant of summary judgment is plenary.  *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 416 (3d Cir. 2008).

[3] "The PHRA is basically the same as the ADA in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'"  *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (omission in original) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

[4] TNG does not dispute, for purposes of this appeal, that Tielle's knee injury was a disability within the meaning of the ADA and that she was otherwise qualified.  Hence we assume that to be the case and decide only whether TNG failed to make a reasonable accommodation.

4

deposition, Tielle could not recall whether she ever "directly asked" to use the food cart for this latter purpose. App. 180. Baresse attests that she did not. And when Baresse confronted Tielle for a third time about placing her weight on the food cart rather than using her cane, Tielle stated that "sometimes it is just quicker to use the cart instead of the cane." App. 148. On these undisputed facts, no jury could conclude that TNG acted unreasonably in failing to offer Tielle the option of placing her weight on the food cart to help her walk—a purpose for which the cart is not intended.[5]

## III.

The District Court also properly entered summary judgment for TNG on Tielle's retaliation and discrimination claims. "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the . . . protected activity; and (3) a causal connection between the . . . protected activity and the . . . adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Similarly, to establish a *prima facie* case of disability discrimination, a plaintiff must show "that she (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citations and internal quotation marks omitted).

---

[5] In arguing that she should have been permitted to use the food cart to help her walk, Tielle points to testimony from her coworkers that they never saw the food cart tip over or otherwise saw her have an accident using it. But even accepting that testimony as true, it does not establish that TNG acted unreasonably in failing to offer Tielle to use the food cart for that purpose, given that she had not requested that accommodation and had been given permission to use a cane instead.

TNG does not contest the first two elements for either claim. As to retaliation, TNG concedes that requesting an accommodation is a protected activity and termination is an adverse action. As to discrimination, TNG concedes for purposes of this appeal that she was disabled and otherwise qualified. What is disputed is the third requirement for each claim: whether Tielle put forward sufficient evidence to establish a causal connection between her termination and either her request for accommodations or her disability.

We agree with the District Court that Tielle has not offered sufficient evidence for a reasonable jury to find a causal connection. As to retaliation, as noted above, there is no evidence that Tielle asked to use the food cart to help her walk. While she did ask to use a cane, that request was granted. And it was granted two years before she was terminated. *See, e.g.*, *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015) (rejecting "suggestion that a gap of nearly three months" between the protected activity and the adverse action is "unusually suggestive" of a retaliatory motive, such that it satisfies a plaintiff's prima facie case (citation omitted)). Likewise, as to discrimination, TNG was aware of Tielle's disability in 2009—approximately seven years before she was terminated. In sum, the timing of Tielle's termination does not suggest that it was retaliation for her requesting an accommodation, or discrimination based on her disability.

Beyond timing, Tielle points to Baresse's comment on the day she was terminated in November 2016 that her use of the food cart to help her walk was a "liability." App.

6

79.[6]  Tielle also points to Baresse's comment—more than a year earlier, in June 2015—that Tielle should "think about" whether to come back in the fall, and that she "better be able to walk better" if she did come back.  App. 88.  But the November 2016 comment cannot reasonably be interpreted as discriminatory.  And even if the June 2015 comment could, the fact that Baresse said it more than a year before the termination renders it insufficient, standing alone, to carry Tielle's burden at summary judgment.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) (holding that a single comment indicative of sex discrimination, made to the plaintiff five years before the adverse action at issue, was not, standing alone, sufficient to meet the plaintiff's burden at summary judgment, and explaining that "[s]tray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision").

* * * * *

In sum, Tielle did not present sufficient evidence to meet her burden at summary judgment.  For her failure-to-accommodate claim, her reasonable request to use a cane to help her walk was granted, and there is no evidence she requested to use a food cart for that purpose.  As to her retaliation and discrimination claims, the evidence is not sufficient for a jury to find that her termination was causally connected to her request for

---

[6] Tielle contends the District Court erred by crediting Baresse's version of this comment: that Baresse was referring to Tielle's *use of the cart* as a liability, not Tielle's *disability*.  But Tielle never genuinely disputed Baresse's version, as she could not recall whether Baresse was referring to her disability, or her use of the food cart, when using the word "liability."  App. 79.

7

an accommodation or her disability.  Hence we affirm the District Court's entry of

summary judgment for TNG.