**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2853
_____

SHAKIRA BROWN,
                                        Appellant

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civil Action No. 1-19-cv-02219)
District Judge: Honorable Jennifer P. Wilson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 10, 2023

Before:  SHWARTZ, BIBAS, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed: October 13, 2023)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Shakira Brown appeals the District Court's grant of summary judgment in favor of her former employer, the Pennsylvania Department of Revenue ("DOR"). Brown brought claims of race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and the Pennsylvania Human Relations Act ("PHRA"). For the reasons that follow, we will affirm the District Court's judgment.

I.

Brown began working as a Taxpayer Account Collections Technician ("TACT") for the DOR in June 2018.[1] TACTs spoke to taxpayers on the phone and handled personal taxpayer information. Accordingly, TACTs were required to safeguard taxpayer information in the course of their work. Brown started training for her position by observing other TACTs at the call center, sitting next to them while they made phone calls and reviewed taxpayer information on their computers.

TACTS were split into two teams. Brown's team of five people was supervised by Jessica Weyant, while Ryan Billheimer supervised a second team. Brown was the only African-American member of her team; Weyant and Billheimer are both Caucasian.

Brown claims that in June 2018, Billheimer made offensive comments to her. He showed her videos of his daughter dancing to music and told Brown that his daughter liked "black music." Pl.'s Dep. at 48. Billheimer also told her that he was protected by an African-American family when he "entered the hood," where he would go and get his hair braided. Id. at 39. Brown did not tell Weyant or any other member of management

---

[1] Because we write primarily for the parties, we will recite only the facts necessary for this discussion. These facts are undisputed unless otherwise noted.

2

about Billheimer's comments, nor did she speak with human resources about it.

On July 16, 2018, Weyant saw Brown taking a FaceTime video call on her personal cellphone while she was sitting in a cubicle next to another TACT who was on the phone with a taxpayer. Weyant testified at a deposition that she had never seen any other TACT use FaceTime or another video chat application on their personal cellphones in the office. Weyant immediately reported this issue to her supervisor, Ross Bordner. Shortly after, Weyant called Brown into her office to discuss the video call. Brown testified at a deposition that she was on her break on her way out of the call center when she answered the video call. She answered it because her young daughter had been injured in a fall.

Either later that day or the next day, Brown spoke to a union representative, Anastasia DiBartolomeo, about the video call incident. Brown also told DiBartolomeo about Billheimer's comments to her, but she did not report them to anyone else. DiBartolomeo advised Brown not to report these issues to the DOR at that time because Brown was still in training.

Bordner, Weyant, and a representative from human resources held a July 23, 2018 pre-disciplinary conference with Brown regarding her use of FaceTime in the call center. Weyant did not know that Brown had spoken to DiBartolomeo about the FaceTime incident or any other issue until Brown initiated this underlying federal action. Bordner and the human resources representative were also not aware that Brown had spoken to the union about any issue previously. At the end of the meeting, Brown was given a letter stating that she was being suspended indefinitely pending an investigation and a final

3

disciplinary decision. The letter specified that the DOR was investigating whether Brown had violated the DOR's confidentiality agreement and standards of conduct by failing to safeguard taxpayer information, as well as related charges. The state secretary of revenue made the decision to suspend Brown after consulting with human resources.

In August 2018, the union reached a settlement with the DOR by which Brown's indefinite suspension would be converted into a long-term suspension without pay, including a final warning that any future infraction would result in her termination. The settlement provided that Brown could return to the prior position she held with the DOR before she began as a TACT in June 2018. Brown did not approve of the settlement and testified that she wanted to continue negotiations with the DOR. The parties dispute what happened next; according to the DOR, Brown's union informed them that Brown would be resigning because she did not accept the terms of the settlement agreement, while Brown claims that she never told her union that she wanted to resign.

On September 18, 2018, human resources staff recommended Brown's termination, stating that Brown's failure to return to work as provided in the settlement agreement was the basis for termination. The next day, Brown was notified by letter of her termination. The DOR subsequently filled her TACT position with an African-American woman.

Brown filed a counseled employment discrimination complaint in 2019, alleging disparate treatment and retaliation under Title VII and the PHRA. After the parties completed discovery, the DOR sought summary judgment. Adopting a Magistrate Judge's report and recommendation, the District Court granted the motion. Brown timely

4

appealed, pro se.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for the DOR. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

After careful review of the record and the parties' filings, we agree with the District Court that summary judgment for the DOR was proper. First, Brown did not establish a prima facie case of racial disparate treatment based on her reprimand, suspension, and termination. To state a prima facie case of disparate treatment, an employee must set out four elements, the last of which is that she suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327-28 (3d Cir. 2015).

Brown has argued that the DOR discriminated against her based on her race because Caucasian co-workers were not subject to suspension or termination for using FaceTime or other video chat applications on their personal cellphones at the call center. However, the record does not contain evidence showing that any of Brown's co-workers used FaceTime or other video chat applications at the call center. At most, one union representative — who did not work in Brown's part of the call center — observed other employees watching videos on their phones, but not receiving video calls where the person on the other line could see into the call center. Accordingly, Brown has not identified any similarly situated comparators who evaded discipline for the same behavior.

Brown has also argued that her termination occurred under circumstances that give rise to an inference of unlawful discrimination because Billheimer made racially offensive comments to her at some point before she was disciplined and fired. But again, the record contains no evidence showing that Brown informed Weyant or anyone in management about Billheimer's behavior before Weyant observed and reported the FaceTime incident, and the record shows that Billheimer played no role in the DOR's decision to suspend or terminate Brown. Cf. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1085 (3d Cir. 1995) ("[S]tray remarks by non-decision makers . . . are inadequate to support an inference of discrimination by the employer.").

For similar reasons, Brown could not establish a retaliation claim. To state a prima facie case of retaliatory discharge, Brown must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a

6

causal connection between the protected activity and the adverse employment action. See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

There is no evidence in the record suggesting that Brown's termination was motivated by her engagement in protected activity. Brown first informed DiBartolomeo about Billheimer's comments to her *after* Weyant had already reported the FaceTime incident to her boss. There is no record evidence showing that DiBartolomeo or another union representative shared this information with anyone else, and Brown did not mention Billheimer's comments to anyone in management. Accordingly, none of the people involved in Brown's suspension or termination were aware of Billheimer's comments to her at the time, or of Brown's report to DiBartolomeo. Accordingly, there is no basis in the record from which a factfinder could conclude that Brown's suspension or termination were connected to her report about Billheimer's comments.[2]

Accordingly, we will affirm the judgment of the District Court.

---

[2] Because Brown cannot state a federal claim of discrimination or retaliation, her parallel discrimination and retaliation claims under the PHRA were also properly dismissed. See Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").